We have seen but one case which clearly conflicts with the reasoning we have adopted—*Crawford v. Meredith et al.*, *6 Geo., 552*,—a case which, so far as we can judge from the report, does not seem to have been very carefully considered.

We think, therefore, the bond in this case, as between the People and the defendants, is to be treated in all respects as a statute bond, and that the Circuit Court erred in excluding it from the jury.

The judgment must be reversed, with costs, and a new trial awarded.

The other Justices concurred.

———◆———

## Security Insurance Company v. Harrison S. Fay.

*Waiver of formal proofs of loss under policy of insurance.* The formal proofs of loss required by a policy of insurance may be waived, and when a party acts in accordance with the instructions of an agent who has assumed to make investigations, he cannot be required to do more.

*Consent to additional insurance; by whom to be signed.* A policy declared on its face that "If, without written consent hereon, there is any prior or subsequent insurance, this policy shall be void:"—*Held*, that such consent, in the absence of evidence dispensing with such signature, must be signed by the person whose signature was declared necessary to the validity of the policy and its extensions.

*Unsigned consent, how made binding: Ratification: Estoppel.* An unsigned consent to additional insurance could only be upheld on proof of authority to bind
the insurers in that way, or upon such recognition or action by them as to
amount to a ratification or estoppel. The action of an agent, neither authorized
nor held out as having authority, would not bind them. They are governed by
the same laws of agency applicable to any one else.

A policy, forfeited by breach of condition, cannot be revived by any act of
waiver or estoppel, unless done upon full knowledge of the facts. And to
constitute an estoppel there must be such conduct on the part of the insurers
as would otherwise operate as a fraud on the other party who has taken
some action to his own prejudice in reliance upon it. Where nothing has been
done by their authority, express or implied, or where no act has been done by
the insured in honest reliance on such waiver, there can be no estoppel.

*Attempt to defraud by violating conditions of policy, effect of.* Any attempt to
defraud the insurers by violating the conditions of the policy, would prevent a
recovery.

*Heard April 13. Decided April 18.*

Error to St. Joseph Circuit.

The facts sufficiently appear from the opinion.

*H. H. Riley,* for plaintiff in error.

*T. C. Carpenter* and *H. F. Severens,* for defendant in error.

CAMPBELL, CH. J.

Judgment was rendered against plaintiffs in error on a
policy of insurance. The defense, among other things,
rested on a forfeiture of the policy by failure to have certain
additional insurance consented to by indorsement on the
policy, and on a failure to furnish the proofs required by
the terms of the policy.

In regard to the latter question, the provisions in the
policy do not provide for any forfeiture on account of the
failure of the insured to furnish the proofs in the formal
manner required, but merely provide that the claim shall
not be payable until these several steps are taken. There
was evidence (though conflicting) from which the jury could
have found that Betts, the agent of the company, very soon
after the fire, set about examining Fay's books with him,
and making an inventory, and on the arrival of the agent
of another company, the books were taken off by the agents

to Betts' house, and that they returned the books to Fay after examining them; and that the goods saved were removed to another place by the advice of the agents. Betts gave a different account in some important particulars, but the court, upon request of Fay's counsel, charged the jury that, if Betts, immediately after the fire occurred, without waiting for a formal preliminary notice from the plaintiff, called for the books and papers of the plaintiff for the purpose of making an inventory and ascertaining the amount of goods destroyed, which request was complied with by the plaintiff, and the examination was had of such books and papers by said agent, and all that the agent required was done by the plaintiff, such fact would constitute evidence from which the jury may presume a waiver of the formal preliminary proofs, and the presence of a regular adjusting agent was not essential to make the waiver binding.

There was no reference in the policy to any separate adjusting agent, and nothing requiring the proofs to be furnished to such a person. We think the formalities, being mostly mere matters of routine beyond the ascertain_ ment of the facts relating to the circumstances of the fire and amount of the loss, might be waived, and that the case was fairly left to the jury on that point. If they believed a part of the evidence, the course taken, inasmuch as it would to some extent have prevented the insured from making his formal proofs as soon as they might have been furnished otherwise, might readily have been supposed to be a waiver without proof to the contrary; and in the conflict of testimony, the facts were with the jury.

Upon the main point of defense the questions involve some complexity. The insurance was for $3,000. The policy contained, among other clauses of forfeiture, one which

declared that "if, without written consent hereon, there is any prior or subsequent insurance, this policy shall be void." This policy was dated September 17, 1866, and renewed September 17, 1867. Up to this latter date there had been no additional insurance. Both policy and renewal contained clauses declaring them invalid unless countersigned by the general agent at Chicago. The local agent's name did not appear on either of them. The policy did not declare who was to sign the consent.

On the 22d of October, 1867, Fay obtained a policy for $2,000 from the agent of a Detroit company. No consent was obtained in advance and no notice given of it until December 7, 1867, when one A. G. Martin, an agent of the plaintiffs in error residing in another place, wrote upon the policy these words: "Other insurance to the amount of $4,000 is hereby permitted. December 7, 1867." This memorandum was not signed by any one. Martin swore he omitted the signature by mistake. There is conflicting evidence as to whether Betts was informed of this additional insurance or consent before the fire. Fay's evidence was that he informed Betts a day or two after the indorsement, and that Betts found fault with it, and said he would like to do his own indorsing, and Fay said Martin told him Betts had no right to do it. There is no further evidence on the subject of consent, but considerable on the question of agency and the power of Martin in the premises.

The questions presented on this part of the case relate largely to the effect of a supposed waiver of the requisite written consent, as well as to the presumable powers of agents to act in such matters. They can best be considered together.

The first thing to be considered is the proper construction of the condition in the policy and the nature of the

consent required by its terms; and then we may properly determine how, if at all, a strict compliance could be dispensed with.

The clause does not refer only to future additional insurances. It applies equally to prior insurances. Had there been any such, a consent to them was required to be written upon the policy; and in that case it would have formed a part of it. The policy was not to be valid unless countersigned by the general agent at Chicago. Upon every sound rule of construction the consent should have been signed by him also; and upon the face of the papers the absence of such signature would have required satisfactory evidence of some state of facts dispensing with it, in order to uphold the policy. The certificate of renewal contains the same guarding clause. The unsigned consent cannot be sustained in the absence of the general agent's signature without distinct proof that it was made by some one who was in fact, or by their conduct fairly supposed to be, authorized to bind the company in that way, or so recognized and acted upon afterwards as to bind them by some sort of estoppel. No court can have judicial knowledge of the powers of all insurance agents, and in order to bind companies for the unauthorized acts of agents, there must be something in the course of business which the party dealing with them has fairly a right to rely on, and there must have been an honest reliance in fact. In other words, dealings with them must be governed by the same rules applied to other persons.

The condition referred to contemplates that the consent to future insurance shall be given in advance, for the policy becomes void if there is any subsequent insurance without consent. When the policy was taken out in October, in the Detroit company, this policy at once became void,

according to our decision in *Western Massachusetts Ins. Co. v. Riker, 10 Mich. R., 279.* The subsequent written consent was not on its face a consent to a past insurance, but its words import rather a future insurance. If made by a person having authority to waive a forfeiture, it would have no such force unless made with knowledge of the previous insurance, and with a design to include it in the permission. And if sought to be made valid by any subsequent waiver or estoppel, that also must have been done with full knowledge of all the facts. It is not to be taken for granted that an expired policy would be revived in all cases where an existing one might be modified or allowed to be affected by new insurances elsewhere.

There is some evidence that Martin knew of the October insurance when he signed the consent. There is no evidence tending to show that Betts was informed of that insurance having been obtained before the written consent; and there is no evidence that any agent except local agents could give assent to such additional insurance. Neither is there any evidence that any agent had distinct authority to renew a forfeited policy, unless included in the power to allow further insurance. If it appeared that Fay had had dealings with Martin as agent for this company in Burr Oak, which the company had acted on and ratified, or that they had held him out to the public as authorized to act there, and Fay had been induced thereby to rely upon his powers, his action to such an extent might stand on a different footing. But in the absence of such facts, Fay dealt with him at his peril, and was bound to learn what authority he really possessed. And the defendants in error rely much upon the subsequent action of Betts, who, as representing the company in Burr Oak, and being the person through whom Fay had dealt with them, might be

authorized to bind them except in matters whereby the policy itself or by other notice, his authority was made known to have been limited.

Assuming, then, as we must, that upon the case as it appeared on the trial there was no valid consent until Betts may have so acted as to confer it; the question next arises whether there can be a waiver of the condition requiring written consent, and if so, whether there was any evidence which would authorize the case to go to the jury on that point.

We have held heretofore that a party dealing with an agent through whom he applies for and obtains a policy, has a right to presume that such material facts as are made known to him are known to his principals. We have also held that when with a knowledge of such facts the insurers accept premiums and keep them, and issue policies, they cannot insist upon conditions which it would be dishonest to enforce after such action.—*Niagara Fire Ins. Co. v. DeGraff, 12 Mich. R., 124; Peoria M. & F. Ins. Co. v. Hall, 12 Mich. R., 202; Peoria Ins. Co. v. Perkins, 16 Mich. R., 380; Ætna Live Stock and Fire Ins. Co. v. Olmsted, 21 Mich. R., 246; N. A. Fire Ins. Co. v. Throop, supra p. 146.* We have also held that nothing is a waiver of the rights of an insurer that would not under the same circumstances be enforced against others; and that it was no waiver of a forfeiture occurring after the date of a policy to collect a premium not actually earned.— *Williams v. Albany City Insurance Compang, 19 Mich. R., 451.*

The waiver that is spoken of in these cases is another term for an estoppel. It can never arise by implication alone, except from some conduct which induces action in reliance upon it, to an extent that renders it a fraud to recede

from what the party has been induced to expect. It is only enforced to prevent fraud. :There is nothing in this case which tends to establish any such defense. Betts is not shown to have manifested any disposition to ratify Martin's action, and Fay in reply to his objections told him that Martin said he (Betts) had no authority in the matter. This evidence does not tend to show that any one supposed the written consent was to be waived, and it does not show any willingness in Betts to waive it—if under such a policy any mere verbal consent could so operate. No assurance was given to Fay that any waiver would be made, and he asked none. He was bound to know that the policy was forfeited without it, unless he could show Martin's authority. There was no further dealing with him of any sort, and he did nothing further, which they were bound to know or suppose he did in reliance on them, or which they were bound to take notice of. And he did not, so far as appears, even inform Betts of the circumstances and dates of the various insurances, which would have been necessary to make any waiver binding if one had been shown—as none has been. There is an entire absence of any proof tending to create an estoppel. All of the rulings, on this hypothesis, were therefore open to objection.

We are also of opinion that under the issues of fact, arising under the evidence, the charge asked for,—that if there was any attempt to defraud the company, by not complying with the conditions of the policy, the plaintiff below could not recover,—was one the defendants below had a right to ask. The testimony was before the jury for their action.

These considerations dispose of the principal questions in the case. We also think that under the inquiry in

regard to the powers of agents by custom, or of particular agents in fact to do particular acts, the answers of witnesses negativing them were not objectionable.

The judgment must be reversed and a new trial granted.

The other Justices concurred.