## The Westchester Fire Insurance Company v. James D. Earle and another.

*Additional insurance: Policy: Consent: Definiteness: Construction.* Where an insurance policy which contains a proviso that additional insurance procured without the consent of the company endorsed thereon should annul the policy, also contains the clause: "$3,000 other insurance per-

WESTCHESTER FIRE INS. CO. v. EARLE.

mitted," it furnishes its own rule of construction as to the definiteness
meant to be required in the consent to future insurance.

*Insurance policies: Conditions: Forfeitures: Construction.* All those condi-
tions and provisions in insurance policies which involve forfeitures are
to be construed strictly.

*Insurance policy: Oral contracts: Statute of frauds.* Except where pre-
vented by the operation of the statute of frauds, or some other equiva-
lent prohibition, a policy of insurance may be made or changed by parol;
and the fact that a policy is written does not prevent its change by sub-
sequent parol agreement, or its enlargement or continuance.

*Contracts,—in writing—by parol.* A written bargain is of no higher legal
degree than a parol one, and either may vary or discharge the other;
and one who has agreed that he will only contract by writing in a cer-
tain way, does not thereby preclude himself from making a parol bargain
to change it; and there is no more force in an agreement in writing not
to agree by parol, than in a parol agreement not to agree in writing.

*Insurance: Policy: Additional insurance: Condition: Forfeiture: Consent:
Estoppel: Agents.* Notwithstanding an insurance policy contains a pro-
viso against additional insurance except upon "the consent of this com
pany written hereon," and provides also that "the use of general terms,
or any thing less than a distinct specific agreement, clearly expressed
and endorsed upon this policy, shall not be construed as a waiver of any
printed or written condition or restriction therein," yet where an agent
with whom all the dealings were had, and whose authority is not shown
to have been restricted in any way, has so acted as to have bound him-
self by way of estoppel not to dispute the validity of certain additional
insurance on the point of consent, the company will be likewise bound.

*Insurance: Agency: Additional insurance: Consent: Estoppel: Forfeiture:
Condition.* Where an agent having authority to consent on behalf of the
company to additional insurance, and with whom the original dealing
was had, has first negotiated to get further insurance placed in some
company which he represented, and conveyed the impression that consent
thereto in writing was not necessary, and afterwards, when informed of
the procuring of an additional policy elsewhere, has made no objection,
then or at any other time, nor offered any suggestion that any breach of
condition of the original policy had been created or would be relied upon,
this would make out a plain case of estoppel as to the agent, and would
also preclude the company from setting up such condition in avoidance
of their policy.

*Evidence: Res gestœ.* Evidence concerning the purchase of the additional
machinery, which was the occasion for the new insurance, is held to have
been admissible as part of the *res gestœ.*

*Requests to charge.* Where a request to charge is not presented separately,
but is coupled with another which is erroneous, the refusal of the whole
is not error, though the former, standing alone, was proper to be given.

*Charge to the jury: Testimony of one witness only.* The court in charging
the jury is not bound on request to present the case to them for con-
sideration on the evidence of one of the witnesses only, or to put to
them any proposition which will confine their attention to one witness
more than another; while this may sometimes be done in a plain case
without error, it is not error to refuse to do it.

*Heard November 2.    Decided January 5.*

Error to Kent Circuit.

*Joslin & Kennedy*, for plaintiff in error, that a waiver of the condition in the policy could not be established except as provided by the policy, cited: *Barrett v. U. M. F. Ins. Co.*, 7 *Cush.*, 175; 9 *Cush.*, 471; *Worcester Bank v. Hartford Fire Ins. Co.*, 11 *Cush.*, 265; *Conway Tool Co. v. Hudson R. Ins. Co.*, 12 *Cush.*, 144; *Kimball v. Howard Fire Ins. Co.*, 8 *Gray*, 33; *Parks v. General Ins. Ass. Co.*, 5 *Pick.*, 34; *Watson v. Emet*, 1 *Taunt.*, 115; *Flinn v. Tobin*, *Mood. & Walk.*, 367; *Meres v. Ansell*, 3 *Wils.*, 275; *Holmes v. C. M. F. Ins. Co.*, 10 *Met.*, 211; *Whitney v. Haven*, 13 *Mass.*, 172; *Carpenter v. P. W. Ins. Co.*, 16 *Pet.*, 495; *Jennings v. C. C. M. Ins. Co.*, 2 *Denio*, 75; *Higginson v. Dale*, 13 *Mass.*, 96; *Cockerill v. Cin. Ins. Co.*, 16 *Ohio*, 149; *Gardner v. Piscat. Ins. Co.*, 38 *Me.*, 439; *Trask v. S. F. & M. Ins. Co.*, 29 *Penn. St.*, 198.

There can be no estoppel *in pais* in behalf of one having full knowledge of all the facts. It applies only to facts.—*Baker v. U. L. Ins. Co.*, 43 *N. Y.*, 283; *Lawrence v. Brown*, 5 *N. Y.*, 394; *W. Ins. Co., v. Riker*, 10 *Mich.*, 279; *S. Ins. Co. v. Fay*, 22 *Mich.*, 467; *N. Y. C. Ins. Co. v. Watson*, 23 *Mich.*, 486; *Am. Ins. Co. v. Gilbert*, 27 *Mich.*, 429; *Van Buren v. St. J. F. Ins. Co.*, 28 *Mich.*, 398.

When the authority of an agent is limited by the contract which he makes with third parties, they cannot be protected by the plea that they had no notice of this limitation, or that the principal would be bound by the acts of the agent in excess of his authority.—*22 Mich.*, 471; 6 *Gray*, 173; 17 *Mass.*, 29; *Pars. on Cont.*, 5th Ed., 59, 61; *Story on Agency*, §§ 127, 133; 22 *Wend.*, 260.

Notice to an agent is notice to the principal only when the agent was acting within the scope of his authority.— *Spandone v. Mansel*, 2 *Daly*, 263; *Pendar v. Am. M. Ins. Co.*, 12 *Cush.*, 469; *Hale v. M. F. Ins. Co.*, 6

*Gray, 173; Sands v. Hill, 42 Barb., 659; Bank v. Lewis, 22 Pick., 243; Ang. on Corp., last ed., 312; Adam's Eq., 322.*

*Norris, Blair & Stone,* for defendants in error. It is the decided tendency of the modern cases to hold that if notice be duly given to the company or its agent, of the additional insurance, and no objection is made, the company will be estopped from insisting on a forfeiture of the policy because their consent was not endorsed as literally required by the stipulation.—*May on Ins.,* § 370, et seq.; Thompson v. St. Louis Mut. L. Ins. Co., 2 Ins. L. J., 422; Heayward v. National Ins. Co., Ibid., 503; Horwitz v. E. M. Ins. Co., 40 Mo., 55; 42 Mo., 456; 43 Mo., 148; 47 Mo., 435; Viele v. Germania Ins. Co., 26 Iowa, 55; Walsh v. Ætna Life Ins. Co., 8 Bush, 133; Peek v. New London, 22 Conn., 575; Hutton v. Beacon Ins. Co., 16 U. C., (Q B.), 316; National F. Ins. Co. v. Crane, 16 Md., 260; and none of the Michigan decisions conflict with this rule, as applied to the facts of this case as found by the jury.—See 12 Mich., 124, 202; 16 Mich., 380; 19 Mich., 451; 21 Mich., 246; 22 Mich., 146, 473; 23 Mich., 487; 24 Mich., 117; 28 Mich., 174.

It must affirmatively appear in the record that the condition has been violated.—See *Wash. F. Ins. Co. v. Davidson,* 30 Md., 91.

CAMPBELL, J:

This case, which has been in this court once before, is now presented under a somewhat different state of facts.

On the 8th of March, 1872, the Westchester Fire Insurance Company insured Earle & Reynolds to the amount of two thousand dollars on their fixed and movable machinery, situated in their woolen manufactory. A fire destroyed the

insured property in January, 1873, during the original term of the insurance.

The policy contained two clauses which are regarded as important in this suit. One was: "If the assured shall have, or shall hereafter make any other insurance upon the property hereby insured, or any part thereof, without the consent of this company written hereon, then, and in every such case, this policy shall be void."

The other was: "The use of general terms, or any thing less than a distinct specific agreement, clearly expressed and endorsed upon this policy, shall not be construed as a waiver of any printed or written condition or restriction therein."

There was inserted in the written part of the policy "$3,000 other insurance permitted." Insurance was effected, at or about the same time, in other companies, for the aggregate sum of three thousand dollars.

In May, 1872, additional machinery, being knitting machinery of the value of three thousand dollars, was put in the factory.

In June, 1872, the firm procured two thousand five hundred dollars further insurance in the American Central Insurance Company upon the entire machinery, new and old; and this was not preceded or followed by written consent of the Westchester Fire Insurance Company. This additional insurance is relied upon as a defense to the suit now before us, it being claimed that the original insurance policy was made void by the additional insurance, because the latter was not formally consented to.

It is claimed by Earle & Reynolds that the conduct of Mr. Atwater, the agent of the Westchester Fire Insurance Company, was such as to leave the policy in force, in spite of the failure to have consent for further insurance endorsed.

Upon most of the facts outside of the writings there is a conflict of testimony. Earle and Reynolds were sworn in their own behalf, and Atwater for the Westchester Fire Insurance Company; and the finding of the jury is in

accordance with the testimony of the insured.     The errors assigned refer to the rulings.

It is to be remarked that the consent actually inserted in the policy did not refer to insurance in particular companies, but allowed the three thousand dollars further insurance to be obtained any where.     It must be assumed, therefore, that it was not designed to require consent to future insurance to be any more definite.     In this respect the policy furnishes its own rule of construction.

It is also to be remarked that the circuit court charged the jury, at the request of the defendant below, that the mere fact that the agent Atwater did not dissent upon receiving knowledge or notice of the intention of plaintiffs below, would create no waiver or estoppel; and further, that it was not the duty of the insurance company, after such notice, to notify the insured that the additional insurance avoided the policy; and further, that the policy contemplated notice of the proposed additional insurance in advance; and that knowledge of the additional insurance would amount to no more than knowledge that the insured had voluntarily terminated the policy.

The court refused to charge that Atwater had no authority to waive the condition, or make assurances that it could be waived, except in the manner provided in the policy; or to charge that there were no sufficient facts proved to constitute a waiver or estoppel.

The charges given, under which the recovery was had, were in substance as follows: that in order to escape the condition the insured must show that the agent had done some act, or made some representation, or remained silent when he ought to have spoken, and thereby misled the insured, and induced them to rely on the policy to their injury, and by causing them to believe the policy remained in force, prevented their seeking other insurance; and that such conduct would preclude the company from setting up the condition; and that notice to the agent was notice to the company.

All the dealings in evidence were with Atwater, the agent at Grand Rapids, where the property was situated; and no other representative of the company took any steps before the fire.

The testimony for the insured went to show that the property insured was worth about twice the amount of the whole insurance. It further showed ·that the first application for further insurance was to Atwater, who said he would try and get it placed in some company of which he was agent, and that after waiting some time without his doing so, the risk was placed elsewhere. It is sworn that in this conversation Atwater said it would make no difference to the company, but did not say in so many words that it need not be consented to in writing, though that inference was drawn from all that took place. There seems also to have been some talk about terms, as that appears to have been one of the reasons for preferring the other insurers.

Immediately after the new insurance was obtained, Earle and Reynolds (according to their testimony) wrote a letter to Atwater, informing him of the precise amount of the additional insurance on the machinery, and stating in detail all the policies which they held, including the one in controversy, amounting with the new policy to seven thousand five hundred dollars, which they said was all they cared to insure on the machinery. In the same letter they asked for terms of insurance on the stock in the building. This letter is sworn to have been left in Atwater's office.

Very shortly thereafter Earle met Atwater, who at once referred to the new insurance, and asked why it had been placed with the other insurers and not with him, and was told it was because it was got on cheaper terms. In this and in following conversations about the same time, no objection was made, and no suggestion offered, that any breach of condition had been created, or would be relied upon. Atwater said he considered the risk of seven thousand five hundred dollars on the machinery then owned, as equivalent to the original five thousand dollars on what was owned before.

No further objection was ever made, and proof of loss was made as required, to the adjusters.

Upon this testimony, which the jury had the right to believe, and which they appear to have believed, it is beyond question that Earle and Reynolds relied, and had reason to rely on the validity of their insurance, and to assume that nothing had been done to destroy it. If Atwater himself had been the insurer, it would be difficult to find a plainer case of estoppel. It would have been a direct fraud to repudiate an obligation after such conduct as could not have failed to induce the insured to rest satisfied with their policies.

The controversy is reduced to the inquiry, whether, with the written conditions of the policy in view, Atwater had authority, or Earle and Reynolds were justified in assuming he had authority to bind the company by such conduct as would have bound himself.

This case does not show that the condition against further insurance without written consent endorsed on the policy, is one which is imposed by the charter of the company; which has in some cases required all contracts to be in writing, and to be signed by the company officers.—See *Insurance Co. v. Colt, 20 Wallace, 560; Spitzer v. St. Mark's Insurance Co., 6 Duer's R., 6; Blanchard v. Atlantic Ins. Co., 33 N. H., 9; Couch v. City Fire Ins. Co., 38 Conn., 181.*

Neither is this shown to be a mutual company, under whose by-laws, brought home to the members, and binding them, an agent or officer cannot deviate from the condition, as has been held in some cases.—*American Ins. Co. v. Gilbert, 27 Mich., 429; Van Buren v. St. Joseph Co. Village Fire Ins. Co., 28 Mich. R., 398; Barrett v. Union Mut. Fire Ins. Co., 7 Cush., 175; Forbes v. Agawam Mut. Ins. Co., 9 Cush., 471; Hale v. Mechanic's Mut. Fire Ins. Co., 6 Gray, 173; Stark Co. Mut. Ins. Co. v. Hurd, 19 Oh., 149.*

Neither is this a case where the consent was, under the policy, to be given by any one but Atwater, or where his

written endorsement would not bind the company.—*Security Ins. Co. v. Fay, 22 Mich., 467; Continental Life Ins. Co. v. Willets, 24 Mich., 268.*

We need not, therefore, consider the correctness of any of those decisions which rest upon the disabilities of agents or officers arising from want of power, plainly notified or known, to act in the business. By the terms of the present policy Atwater was to countersign it, and any policy which he countersigned would have bound the company to an innocent holder, whether he had or had not violated his duty to his principal. Earle & Reynolds were to deal with him, and with no one else.

It was held in *Hibernia Insurance Co. v. O'Connor, 29 Mich. R. 241,* that delivery by an agent, of a policy and renewal certificate, as valid and effective instruments, made them good and binding without being countersigned by him, although countersigning was required by their terms. Such delivery was held a waiver of the formal condition. And it has been more than once held by this court, that where an agent in giving a policy has, by his own conduct, misled parties into making applications or accepting conditions under a misapprehension as to their literal accuracy, the company is estopped by his action.—*Michigan State Ins. Co. v. Lewis, 30 Mich., 41; Continental Insurance Co. v. Horton, 28 Mich., 173; Peoria Ins. Co. v. Perkins, 16 Mich., 380; Ætna Live Stock, Fire and Tornado Ins. Co. v. Olmstead, 21 Mich., 246; N. A. Fire Ins. Co. v. Throop, 22 Mich., 146; Peoria M. & F. Ins. Co. v. Hall, 12 Mich., 202; Niagara Fire Ins. Co. v. De Graff, 12 Mich., 124.*—See also to the same doctrine, *Insurance Co. v. Mahone, 21 Wal., 152; Mitler v. L. Insurance Co., 12 Wal., 285; Ins. Co. v. Slaughter, 12 Wal., 404; Ins. Co. v. Wilkinson, 13 Wal., 222.*

It has been held that all of those conditions and provisions which involve forfeitures are to be construed strictly. Such is the common-law rule in regard to forfeitures, and it is a wholesome and sound rule. Parties may contract

very much as they choose, so long as they keep within the law; and it may be assumed there is some reason for each condition adopted. But there is great hardship in allowing parties to keep money which they have not fairly earned, and great wrong in favoring blind conditions, or those which parties do not fully understand, where they are not in actual fault. A close construction is the only just one.

In *Insurance Co. v. Colt, 20 Wal., 560,* it was held that although by a corporation charter all contracts, policies, etc., were required to be in writing or in print, sealed by the corporation and signed by the president and attested by the secretary or other officer appointed for that purpose, yet this only applied to the executed contracts and policies, and that an agent could bind the company by a preliminary contract, which they would be compelled to perform. In that case the policy was not made out until after the fire, but it was held to relate back to, and to be in performance of, the preliminary bargain. The decision refers to several analogous cases, and rests upon the analogies of specific performance, where, although land can only be conveyed by deed, yet an agreement for a conveyance need not be itself of the same character as a specialty.

In *Insurance Co. v. Webster, 6 Wal., 129,* a policy on which after its delivery a memorandum was endorsed that it should take effect upon the approval of a general agent named, was held valid and effectual until disapproved.

In *Peck v. New London Co. Mutual Ins. Co., 22 Conn., 575,* where a charter required the consent of the directors to further insurance, it was held that consent given by an agent should be regarded as their consent, and that every agent might, if necessary, stand as a secretary for that purpose.

So it was held in *Hatton v. Beacon Ins. Co., 16 Q. B. U. C., 316,* that where an agent stated that an endorsement was unnecessary, it was a waiver of a condition requiring endorsement.

It is very well settled that, except where prevented by

the operation of the statute of frauds, or some other equivalent prohibition, a policy of insurance may be made or changed by parol.—*Sanborn v. Fireman's Ins. Co., 16 Gray, 448; Kelly v. Com'th Ins. Co., 10 Bosworth, 82; Audubon v. Excelsior Ins. Co., 27 N. Y., 219; Baxter v. Massasoit Ins. Co., 13 Allen, 320.*

The fact that a policy is written does not prevent its change by subsequent parol agreement. Any written contract not within the statute of frauds may be changed by parol.—*Seamen v. O'Hara, 29 Mich., 66.* And this has been applied to the enlargement, and continuance of policies.—*Kennebec Co. v. Augusta Ins. Co., 6 Gray, 209; Trustees 1st Baptist Ch. v. Brooklyn F. I. Co., 19 N. Y., 305.*

The powers of Atwater in the present case do not appear to be restricted in any way. The condition literally applied would prevent any unendorsed consent by the company itself, by resolution of its board, or by act of its officers, as effectually as by any one else. And the case seems to settle down to the simple question whether a person who has agreed that he will only contract by writing in a certain way, precludes himself from making a parol bargain to change it. The answer is manifest. A written bargain is of no higher legal degree than a parol one. Either may vary or discharge the other, and there can be no more force in an agreement in writing not to agree by parol, than in a parol agreement not to agree in writing. Every such agreement is ended by the new one which contradicts it.

We think the case was properly laid before the jury upon the important issues.

The evidence concerning the purchase of the additional machinery was proper as part of the *res gestæ*. It was the occasion for the new insurance, and while it would not have validated this without some consent or action of the agent or company, it furnished a very good reason for such consent. The error assigned, on which it is claimed the

33 MICH.—20.

court erred in refusing to charge that the purchase did not affect the condition, is not founded on the record. The request for that charge was not separate, but asked a charge that the policy was made void unless there was written consent, and this addition concerning the purchase was a part of that general request which the court rightly refused.

Objection was also made that some answers to the interrogatories in a deposition of Earle's were not responsive. We do not think this was the fact.

Error is also assigned upon a refusal to charge that if the jury believed Mr. Atwater's testimony they must find for defendant. The court told them that if they considered it a square denial of Earle's testimony, and believed it, they should so find, but remarked that counsel had claimed it was not, and so it was left for them to determine.

It certainly belonged to the jury to settle this question, where there was a dispute about it. But we do not think a court is bound to present any such proposition to a jury as will confine them to considering one witness more than another. There may be no objection to it if the case is plain and if the court finds it will simplify matters to do so. But it is a very different thing to hold that a court is obliged to do it. The duty of the court is ended when the jury have been properly charged upon the law as applicable to the facts, and it is more important that they consider the facts themselves in the light of all the testimony, than by singling out witnesses whom they may believe wholly, or partially, or not at all, according as they are convinced.

We find no error in the record, and the judgment must be affirmed, with costs.

The other Justices concurred.