## Elijah D. Kitchen v. The Hartford Fire Insurance Co.

*Avoidance of policy for additional insurance—Estoppel.*

An applicant for fire insurance told the agent that he meant to obtain
farther insurance in other companies and asked him so to notify the
company he represented. The agent replied that it would be need-
less to do so until such insurance was obtained. The applicant had
no notice of any limitations upon the agent's authority. *Held,* that
the company was estopped from denying liability on the ground that
its policies forbade additional insurance without its consent.

Error to Shiawassee. (Newton, J.) May 1.—June 3.

Assumpsit. Defendant brings error. Affirmed.

*M. V. & R. A. Montgomery* for appellant.   Additional insurance avoids a policy at once, unless consented to : *Allemania Insurance Co. v. Hurd* 37 Mich. 13 ; *Western &c. Insurance Co. v. Riker* 10 Mich. 279 ; *Security Insurance Co. v. Fay* 22 Mich. 469 ; *New York Central Insurance Co. v. Watson* 23 Mich. 487 ; if void it could only be revived with the consent of the insurer : *Sun Insurance Co. v. Earle* 29· Mich. 412.

*Wixom & Mosely* and *Jas. M. Goodell·* for appellee.   An insurance company which has acted with full notice of the facts and received a party's money under circumstances leading him to suppose he was receiving in consideration thereof a valid contract of indemnity is estopped from repudiating the contract afterwards : *Peoria Ins. Co. v. Hall* 12 Mich. 213 ; *Ætna Ins. Co. v. Olmstead* 21 Mich. 253 ; *N. Am. F. Ins. Co. v. Throop* 22 Mich. 159 ; *Mich. St. Ins. Co. v. Lewis* 30 Mich. 41 ; *Security Ins. Co. v. Fay* 22 Mich. 467; if the agent knows,. when he issues a policy containing a clause rendering it void in case of other insurance without written consent indorsed thereon, that there is other insurance on the same property, the policy so issued will not be void, although such· agent makes no indorsement of consent thereon : *Sherman v. Madison Mut. Ins. Co.* 39 Wis. 104 ; *Roberts v. Continental Ins. Co.* 41 id. 321 ; *N. E. F. & M. Ins. Co. v. Schettler* 38· Ill. 166 ; *Lycoming Ins. Co. v. Barringer* 73 id. 230 ; *Ill. Mut. F. Ins. Co. v. Malloy* 50 id. 419 ; *Pitney v. Glens Falls Ins. Co.* 65 N. Y. 6 ; *Carroll v. Charter Oak Ins. Co.* 40 Barb. 292 ; when the agent fills up the application, knowing or having been properly informed by the applicant of the facts demanded by the questions therein touching the title, incumbrances, value, etc., mistakes in the application as to such facts are the mistakes of the company,. and do not avoid the policy : *Mechler v. Phœnix Ins.. Co.* 38 Wis. 665 ; so is an omission to state a material· fact in the application, of which fact the agent had full knowledge, if such omission was not fraudulent or intentional : *Wright v. Hartford F. Ins. Co.* 36 Wis. 522 ;. a warranty against overvaluation was held to be broken only in case of an intentional overvaluation, in *Helbing v. Svea. Ins. Co.* 54 Cal. 156 : 35 Am. Rep. 72 ; no misrepresentation can be predicated of a fact of which the insurers were fully cognizant : *Mulville v. Adams* 19 Fed. Rep. 891 ;. where one party has by his representations or his conduct, induced the other party to a transaction to give him an.

advantage which it would be against equity for him to assert, he would not in a court of justice be permitted to avail himself of that advantage: *Plumb v. Cattaraugus Ins. Co.* 18 N. Y. 392; *Rowley v. Empire Ins. Co.* 36 N. Y. 550; *Woodbury Sav. Bk. v. Charter Oak Ins. Co.* 31 Conn. 526; *Combs v. Hannibal Ins. Co.* 43 Mo. 148; powers of the agent are prima facie, co-extensive with the business intrusted to his care, and will not be narrowed by limitations not communicated to the person with whom he deals: *Bebee v. Ins. Co.* 25 Conn. 51; *Lycoming Ins. Co. v. Schollenberger* 44 Penn. St. 259; *Beal v. Ins. Co.* 16 Wis. 241; *Davenport v. Ins. Co.* 17 Ia. 276; an insurance company establishing a local agency, must be held responsible to the parties with whom they transact business, for the acts and declarations of the agent within the scope of his employment, as if they proceeded from the principal: *Sav. Bk. &c. Assn v. Charter Oak Ins. Co.* 31 Conn. 517; *Horwitz v. Ins. Co.* 40 Mo. 557; *Ayres v. Ins. Co.* 17 Ia. 176; *Howard Ins. Co. v. Bruner* 23 Penn. St. 50.

CHAMPLIN, J. This is an action brought by the plaintiff to recover from the defendant the amount claimed to be due upon a policy of insurance.

The policy in question was issued at the company's agency in Chicago, and is there countersigned as of date of January 12, 1883. The risk was to commence on that day at noon and extend to January 12, 1884, at noon. The policy was issued upon a written application signed by the assured, which was made a condition of the insurance, a part of the contract, and a warranty on the part of the assured. The property insured consisted of a store building, valued at $1200, and insured for $800, and a stock of goods contained in the store building, valued at $5000, and insured for $1500, located at Bancroft, Shiawassee county, Michigan. The application for insurance was made to F. M. Douglas, who was an agent of defendant residing at Bancroft, and duly authorized to solicit and forward applications for insurance, deliver policies and renewals to applicants, and collect and forward premiums on same, subject to a book of instructions furnished him and made a part of his authority and also to such rules and instructions as he might receive from time to time from the

Chicago office. The book of instruction and the rules and instructions were not given in evidence.

The company employs two kinds of agents,—one called a surveyor, to which class Douglas belonged. These agents were not intrusted with blank policies, and had no authority to fill out policies or make indorsements thereon. The other kind are styled recording agents, who are intrusted with the custody of policies, and have authority to fill out and deliver them, as well as to make indorsements thereon.

The application signed by plaintiff was dated January 11. In it nothing is said about the effect upon the policy to be issued thereunder in case other insurance is effected upon the property insured without the consent of the company. The only reference to other insurance are the following questions: " What other insurance on property; in what company, and rate ?" To which there is no answer. " What rate has been paid ?" *Answer.* " Two." "Has risk been declined by any company ?" *A.* " No." Mr. Douglas was postmaster at Bancroft, and taking this application from Mr. Kitchen, forwarding it to the company, delivering the policy, and collecting the premium in this single case, is all the insurance business he ever did.

The policy contains the following clause :

" If an application, survey, plan, or description of the property herein insured is referred to in this policy, such application, survey, plan, or description shall be considered a part of this policy, and a warranty by the assured ; and if the assured, in written or verbal application, *makes any erroneous representation, or omits to make known any fact pertaining to the risk; or if there shall be any other insurance, whether valid or otherwise, on the property insured, or any part thereof, at the time this policy is issued, or at any time during its continuance, without the consent of this company written hereon,—* * * * this policy shall be void."

When Mr. Kitchen made the application to Mr. Douglas for the insurance, he informed him that he should take out other insurance upon his stock with Mr. Simonson, another insurance agent at Bancroft, who was then absent, as soon as he returned home. Mr. Douglas says he told Mr. Kitchen

it would not be necessary to mention it in the application, but when he got his policy from Mr. Simonson he would have to get permission from the Hartford. After he received the Hartford policy, and within two or three days, he took in the policy of the Sun Insurance Company, represented by Mr. Simonson, and Mr. Kitchen testifies that he at once informed Mr. Douglas, and requested him to notify his company of such additional insurance.

The store and contents burned September 3, 1883, and were totally lost. October 8, 1883, proofs of loss were made, and forwarded to the company's agency at Chicago on October 16, and soon after he received the following reply :

"CHICAGO, October 19, 1883.

*Elijah D. Kitchen, Esq., Bancroft, Michigan*—DEAR SIR: We are in receipt of yours of the sixteenth inst., inclosing proofs of loss under policy No. 38,034, of the Hartford Fire Insurance Company, of Hartford, Connecticut, issued at its general agency at Chicago, Illinois, insuring eight hundred dollars on building, and fifteen hundred dollars on stock of merchandise therein, property belonging to you, and located at Bancroft, Michigan. Upon examination of such proofs of loss, we learn that there was twenty-five hundred dollars other insurance upon the stock insured in said Hartford policy, which, by its terms, is void by reason of such other insurance, without notice to this company, and its consent written thereon. We refer you to the conditions of your said Hartford policy, and hereby notify you that this company denies any and all liability under said policy number 38,034, by reason of the other insurance as aforesaid, without notice and the consent of this company written thereon. Accompanying said proofs are duplicate bills of purchase which we hold subject to your order, in case you desire to use them elsewhere.

Yours very truly,     W. H. TAYLOR, 2d Assistant G. A."

The plaintiff contends that his case comes within and is ruled by *Westchester Fire Ins. Co. v. Earle* 33 Mich. 143. On the other hand, the defendant claims that the case is ruled by the principles laid down in *New York Cent. Ins. Co v. Watson* 23 Mich. 486. Both of those cases turned upon the effect to be given to the clause in the policy which rendered it void in case any other insurance had been or should be

made upon the property, and not consented to in writing by the company; and also whether, under the circumstances of each case, there had been a waiver of the condition or an estoppel by acts in pais by the company.

In the *Watson* case additional insurance had been taken out, and the company had never consented in writing. The trial judge left it to the jury to determine whether or not there had been any waiver of this condition or of the forfeiture under it. This Court held that there was nothing to authorize this question to be submitted to the jury; that under the decisions of *Western Ins. Co. v. Riker* 10 Mich. 279, and *Security Ins. Co. v. Fay* 22 Mich. 467, the policy became absolutely void at once upon the obtaining the last insurance without consent; that nothing could revive them short of a new contract on valid consideration, or such conduct as, by misleading the insured to their prejudice, would operate as an estoppel. And, speaking of the case before it, the Chief Justice who delivered the opinion said : " There is no item of testimony tending, in the remotest degree, to show that any such contract was made, or that the insured did anything by the encouragement of the plaintiff in error, or their lawful agents, to their own prejudice, or anything which they would not have done under other circumstances. There is no evidence that the insurers knew anything about it. But mere knowledge of it, without some other act knowingly done to the prejudice of the insured, would not amount to anything more than knowledge that the latter had seen fit to terminate the policies."

This case was followed by *Allemania Fire Ins. Co. v. Hurd* 37 Mich. 11, where a similar clause was under consideration, and there it was not claimed that the company ever consented to the additional insurance, or had any notice thereof, except as appeared from a letter, written by the agents of the company to the insured in reply to one received by them, as follows : " GENTLEMEN : Your favor of the 30th inst. at hand, and noted. We will, of course, allow other concurrent insurance with the Allemania policy, and will also place you more insurance at same rate that we charged you before, and

do it in 'A 1' company or companies.  Our Mr. Bussey is at present in the western part of the State on special work. Trusting to hear from you at your earliest convenience, we remain," etc.

It was held that this letter did not amount to a consent to any specific additional insurance, although it expressed a willingness to permit additional insurance, and offered to place it upon the same property at the rates before charged. Mr. Justice Marston said : " The correspondence between the parties would not take the place of the consent required by the terms of the policy, and the policy of insurance issued by the plaintiff in error became absolutely void at once, upon the obtaining of the additional insurance without consent."

The policy in the case of *Westchester Fire Ins. Co. v. Earle* 33 Mich. 143, contained a like clause, and one question prominently discussed in that case was whether there could be a waiver, by parol, or by acts and conduct, of the written condition ; and it was held that there could be.  The charge of the court under which a recovery was had, and which was sustained in this Court, was as follows : " That in order to escape the condition the insured must show that the agent had done some act, or made some representation or remained silent when he ought to have spoken, and thereby misled the insured, and induced them to rely on the policy, to their injury, and, by causing them to believe the policy remained in force, prevented them seeking other insurance, and that such conduct would preclude the company from setting up the condition, and that notice to the agent was notice to the company."  The testimony in the case showed that the first application for further insurance was to the agent, who said he would try to get it placed in some other company, and after waiting a time without his doing so they placed the risk elsewhere.  In a conversation the agent said it would make no difference to the company, but did not say in so many words that it need not be consented to in writing, though that inference was drawn from all that took place.  Immediately after the new insurance was obtained they informed the agent of the amount, by a letter left in his office, and shortly after

met the agent, who referred to the new insurance, and asked why it had not been placed with him. No objection was made, and no suggestion offered, that any breach of condition had been created or would be relied on. Upon this testimony this Court held that the jury had the right to believe, and that the insured had reason to rely on, the validity of their insurance, and that nothing had been done to invalidate it; and Mr. Justice Campbell said: "If Atwater," the agent, "himself had been the insurer, it would be difficult to find a plainer case of estoppel. It would have been a direct fraud to repudiate the obligation after such conduct as could not have failed to induce the insured to rest satisfied with their policies."

It is now proper to return to the record in this case. The judge certifies that the bill of exceptions contains, substantially, the testimony given on the trial. With reference to obtaining additional insurance the plaintiff testified that when he applied to Mr. Douglas, the following conversation occurred: "I told him that I wanted to take fifteen hundred dollars in his company on the stock, and eight hundred dollars on the building, and that I was going to take $2500 in the other company with Mr. Simonson as soon as he returned home. Mr. Douglas said that was all right. When he wrote the application out, I says to him, 'Now, notify your company that I am going to put this additional insurance on when you send in this application.' He says to me, 'It is unnecessary; ours is the first policy, and we don't care about that.' Then I told him to send it in any way, and tell them I was going to put additional insurance on. He says, 'It is only a supposition you are going to put additional insurance on, and we cannot notify the company on a supposition.'" He further testified as follows: "Mr. Simonson came back and gave me the application, and when this second policy came back that I got from Mr. Simonson, I was going to either my dinner or my supper,—I will not be sure which,—and had this policy with me. Mr. Simonson brought it in, and I took it. I called for my mail when Mr. Douglas was there. I says to him, 'if you have not informed your company that I have put

this additional insurance on when you sent in the application, do it now, for here is the policy.' I had the policy in my hand, at the time, that I got from Mr. Simonson, the same day I got it. I never had any other talk with Mr. Douglas until after the fire. He made no answer."

Mr. Douglas' attention was called to this testimony, and he gave his version of the matter as follows : " That Mr. Kitchen said he expected to take some additional insurance with Mr. Simonson, but did not tell him the company or the amount; that he replied : ' When you get your insurance, you can get permission,'—or, we will have to get permission from the company (the Hartford company) ;' that Mr. Kitchen said nothing about that additional insurance that he recollected of ; that he had no recollection of any talk of the kind testified to by Mr. Kitchen as having occurred in the post office, and knew of no such talk ; that he was postmaster then, and had no recollection of handing Kitchen a letter and talking with him about having received another insurance policy. He stated on cross-examination that he had a conversation with Mr. Simonson soon after the Sun policy was issued, in which he told Mr. Simonson that Mr. Kitchen said he expected to get out further insurance, or take out a policy with him ; and he admitted that in a conversation with Mr. Simonson and Mr. Mosely he stated to Mr. Kitchen at the time that it was not necessary to mention the fact that he was going to obtain additional insurance in the application."

No consent was indorsed on the policy. The foregoing is all the testimony that bears on the question of waiver, or out of which an estoppel is raised to prevent defendant from insisting upon the breach of this condition of the policy. Upon this testimony there can be no question but that the plaintiff relied upon the statements of Douglas, as authorizing him to obtain additional insurance, and upon having done all that was required of him when he informed Douglas of the name of the company, and the fact that he had perfected such new insurance ; and that he relied upon his insurance as effectual for his protection to the amount insured. If Douglas had been the insurer, his conduct after what transpired between

him and plaintiff would have estopped him from relying on the breach of the condition. Nothing can be plainer than this. The controversy, therefore, as in the *Earle* case, is reduced to the inquiry, whether, with the written condition of the policy in view, Mr. Douglas had authority, or was Kitchen justified in assuming he had authority, to bind the company by such conduct as would have bound himself.

In the case referred to it was said that the powers of the agent did not appear to be restricted in any way. In this case the authority of the agent was restricted in the manner hereinbefore stated; and the question is whether the company is bound by the acts or conduct of an agent who has power to solicit insurance, make examination and survey of premises, take applications therefor and forward them to the home company or to its branch agency, or other agency where policies are issued, to deliver policies, and collect premiums. There is no evidence that any restrictions upon his authority as agent was brought to the knowledge of the plaintiff, or others dealing with him. He did not profess to be merely a solicitor of insurance. He professed to act as agent for defendant, signed his name to the approval of the application as agent, assumed to direct whether mention should be made of the proposed additional insurance, and gave no information to the applicant of his restricted powers. Under these circumstances, if he had no authority to waive the conditions of the policy, which he did by telling plaintiff to first take his additional insurance, and then get permission (for, as was held in *New York Cent. Ins. Co. v. Watson*, the policy became void the moment the new insurance was effected), who is to suffer the loss occasioned by such want of authority, the insured who relied upon the representations and conduct of the agent, or the company whose agent he was?

The point was discussed in *Security Ins. Co. v. Fay* 22 Mich. 467, by Mr. Justice Campbell. In that case the insured relied much upon the action of the local agent after the new insurance was placed, who, as representing the company at that place, and being the person through whom the insured

dealt with them, might be authorized to bind them, except in matters where, by the policy itself or by other notice, his authority was made known to have been limited. Mr. Justice Campbell says: "Assuming then, as we must, that, upon the case as it appeared on the trial, there was no valid consent until Betts may have so acted as to confer it, the question next arises whether there can be a waiver of the condition requiring written consent, and if so, whether there was any evidence which would authorize the case to go to the jury on that point. We have held heretofore that a party dealing with an agent, through whom he applies for and obtains a policy, has a right to presume that such material facts as are made known to him are known to his principals. We have also held that when, with a knowledge of such facts, the insurers accept premiums and keep them and issue policies, they cannot insist upon conditions which it would be dishonest to enforce after such action." Such is this case. Kitchen had a right to presume, when he applied for a policy from Douglas, that the fact made known to him, with reference to his obtaining additional insurance, was known to his principals, and the instructions the agent then gave with reference thereto were the instructions of his principals, and that he was authorized, by the assent then given, to obtain such new insurance without avoiding his policy. The conduct of the agent at that time, and also when afterwards he was informed of the obtaining of the policy in the Sun Company, and the action had in reliance upon it, would render it a fraud for the defendant to recede from what the plaintiff was induced to expect. The defendant must therefore be held bound by the representations and acts of its agent Douglas, and must be deemed estopped from now insisting upon the enforcement of this clause of its policy.

The other questions set up in the notice of defense to the action, relative to the overvaluation, were questions of fact which have been found by the jury in plaintiff's favor. There was no error in the rulings of the court in the admission or rejection of testimony. Several errors are assigned

57 MICH.—10.

upon the language of the charge as given, but as it was in substantial accord with the views herein expressed, we perceive no error; and the

Judgment is affirmed.

The other Justices concurred.