SIMPSON *v.* OHIO FARMER'S INSURANCE CO.

INSURANCE—DWELLING HOUSE—PRINCIPAL AND AGENT—AUTHORITY OF INSURANCE AGENT.

Where plaintiff applied for insurance upon a frame building which was occupied at the time as a mission house in which religious services were held, and defendant's agent had knowledge that the policy covered a building used for such purpose, but in issuing the policy a rider was attached to the contract, stating that the policy covered the premises while occupied as a private dwelling, defendant was estopped to claim that the policy was invalid on the ground that it covered only the premises while occupied as a dwelling house, the verdict of the jury determining that the agent was correctly informed concerning the use to be made of the building and that he had authority to write insurance upon a structure used as a mission house.[1]

---

[1] Upon the effect of the agent's insertion in the application of false answers to questions correctly answered by the insured, see notes in 4 L. R. A. (N. S.) 607 and L. R. A. 1915A, 273.

Error to Washtenaw; Kinne, J. Submitted January 26, 1915. (Docket No. 67.) Decided March 17, 1915.

Assumpsit by Martha Simpson against the Ohio Farmer's Insurance Company. Judgment for plaintiff, defendant brings error. Affirmed.

*Floyd E. Daggett*, for appellant.

*Lee N. Brown* and *John P. Kirk*, for appellee.

MOORE, J. The plaintiff, the 19th day of October, 1912, took a policy of insurance from the defendant, which described the property as follows: $500 on the two-story shingle roof, frame building and additions, while occupied as a private dwelling house, situate No. 523 Second avenue, Ypsilanti, Mich. The premium of insurance was paid. The application for insurance was an oral one. Proofs of loss were made. The defendant declined to pay the loss, and this suit was brought. The case was tried before a jury. From a judgment in favor of plaintiff in the sum of $450, the case is brought here by writ of error.

In the plaintiff's declaration was incorporated a copy of the policy. In the amended declaration it was averred:

"That at the time of the procuring of said insurance by said plaintiff of said defendant, the said defendant, through its agent, Edmund Hewett, was notified that the property insured by the terms of said policy was not being used at that time as a dwelling house, but instead thereof that it was being used and occupied as a mission house and a place of holding meetings for religious worship. And the plaintiff further avers that said building so insured by the terms of said policy continued to be used as a mission house and as a house of worship from the time of the issuance of said policy until said building was destroyed by fire as hereinafter described."

There are many assignments of error, but all of them which are important hinge upon whether the trial court correctly stated the law in the part of his charge reading as follows:

"The principal controversy arises through a clause in what may be termed a rider, but which is nevertheless an essential part of the policy, as follows: 'While occupied as a private dwelling.' From that more particularly it is that the controversy in this case has arisen. * * *

"It is the claim of the plaintiff that on or about October 19, 1912, she, through her husband, who was acting as her agent, secured a policy of insurance upon the building located at 523 Second avenue, Ypsilanti, from the defendant company in the sum of $500, and paid the premium therefor.

"It is further claimed on the part of the plaintiff that, at the time she secured said insurance, Mr. Edmund Hewett, the duly authorized agent of the said defendant company, was informed before said policy was issued, and knew at the time of the issuance of said policy, that the building was being used for a meeting or mission house and for other religious purposes and that it would be so used during the life of the policy.

"Now, if you find from the evidence that these contentions on the part of the plaintiff have been sustained by the evidence, and you further find, from the evidence, that the company has not been injured by any breach of the conditions mentioned in the policy, and if you further find that said loss did not occur by reason of any breach of any condition in the policy, then the plaintiff is entitled to recover in this case. * * *

"As I have said to you before, the policy of insurance in this case provided, among other things, that it should remain in force while the building was occupied as a private dwelling. Under the undisputed evidence in this case, this building was never during the life of this policy used as a private dwelling, but wholly as a building for public religious purposes, and, as I said to you before, about this clause arises the principal controversy in this case.

"I instruct you, if you find from the evidence that there was no understanding between the insured—that is, between Mrs. Simpson, who was represented by her husband—and the agent of this company, other than as written in this policy, then there can be no recovery in this case.

"If you find from the evidence that there was no understanding between the insured, Mrs. Simpson, and the agent, Mr. Hewett, that this building was being used, and that it was to be used in the future while the policy was in force, as a mission house and for religious purposes, then the defendant is entitled to your verdict; but, on the other hand, if you find from the evidence that Mrs. Simpson, through her husband, as her agent, stated to Mr. Hewett, as agent of the insurance company, that the building was rented already to Mr. Taylor, who appears to be a clergyman, and that it was being used and would be used as a mission house and for religious purposes, then I think the said company is estopped from setting up as a defense in this case that said building was not occupied as a dwelling. That defense must fail, if you do so find."

It was the claim of plaintiff, and proof was given tending to support the claim, that the agent of the defendant was informed, when application was made for the policy, that the building was used, and was to be used, as a mission house in which religious services were to be held, and that neither the husband of the plaintiff nor the plaintiff read the policy or knew its contents until after the fire.

The agent was a witness and denied that he was told the building was to be occupied for any other purpose than as a dwelling. His authority was not restricted. He had authority to write a policy on the building had it been occupied as a mission house. The agent knew the building and had insured it previously in the sum of $600. He passed it frequently both before and after the insurance.

"I knew the building, I had passed by it perhaps 100 times and knew it was there. * * * My at-

tention was never called to the fact that this place was being used as a mission house."

It is insisted all the testimony as to what was told the agent is incompetent. We quote from the brief:

"It is the contention of the defendant that the policy of insurance was perfectly plain, in that it insured certain property therein described only while occupied as a private dwelling house. The language is plain, unambiguous, and therefore needs no outside evidence to explain its meaning. And, further, that the evidence shows, and is admitted, that the building was never so occupied, and that therefore the policy never covered the property.

"If a policy of insurance does not read correctly, it may be amended in a court of equity, says this court in *Kleis* v. *Insurance Co.*, 117 Mich. 469 [76 N. W. 155], but that in an action of law the contract as written must prevail. The declaration in this case is upon the insurance policy itself. No new count is sought to be added by the amendment. The amendment simply introduces into the original declaration certain oral statements made at the time the agent was approached to write the risk."

Counsel also cite *Wierengo* v. *Insurance Co.*, 98 Mich. 621 (57 N. W. 833), and many other cases which may be found in the briefs. In the *Wierengo Case* it was claimed as a defense to the policy the property insured was mortgaged without the consent of the company. The opinion states:

"Neither the defendant nor its agent, White, had any knowledge of the existence of this mortgage at the time the policy was issued."

Clearly a different case from the one before us.

In *Kleis* v. *Insurance Co.*, *supra*, the plaintiff sought to recover upon an oral contract; the court held there was no oral contract. We quote from the opinion:

"A few days later, the policy which was subsequently issued by the defendant company was received by the plaintiff; and, a week or two after that, she was required to sign an application, which she did.

This was the completion of a contract, evidence of which was contained in the two writings, viz., the application and policy, which merged all negotiations and agreements in the writing; and, under innumerable authorities, it is not subject to contradiction or variation by parol in an action brought upon it."

Clearly not the case before us. Without stopping to analyze the other cases, an examination of them will show them distinguishable.

We think the instant case is within a line of cases of which *Gristock* v. *Insurance Co.*, 87 Mich. 428 (49 N. W. 634), is an example. Justice GRANT, speaking for the court, said:

"The learned counsel for the defendant in their brief on this hearing insist that certain clauses of the policy were omitted in the former opinion (84 Mich. 161 [47 N. W. 549]), and that similar clauses were never before passed upon in this court. The first clause referred to is the one containing conditions as to mortgage. The policy provided that the company should not be liable

" 'if the property * * * is or shall become mortgaged * * * without the assured's written notice to, and without the written permission of, this company indorsed on this policy.'

"In such case the policy was to be void. As stated in the former opinion, there was no written application, and defendant's agent was informed by the plaintiff of the mortgage existing upon the property. In obtaining this insurance, this agent represented the defendant and not the plaintiff. The plaintiff had concealed nothing, but, on the contrary, had disclosed to the defendant, through its agent, the exact condition of the property. * * * Why, with the more reason, should it not be held to assume the risk of a disclosed incumbrance, which, for some reason, it has not seen fit to indorse upon the policy? The only difference between that case and this one is that this policy required a written notice by the assured, and permission to be indorsed upon the policy. But, if the attention of the assured in that case had been called to the condition, it would as certainly have avoided his policy as would the clause now under considera-

tion. The principle is the same in both cases, and both must be governed by the same rule. Plaintiff had a right to rely upon the assumption that his policy would be in accordance with the terms of his oral application. If the defendant desired to make it anything different, it should, in order to make it binding upon plaintiff, under the authorities in this State, have called his attention to those clauses which differed from the oral application."

See *Crouse* v. *Insurance Co.,* 79 Mich. 249 (44 N. W. 496) ; *Russell* v. *Insurance Co.,* 80 Mich. 407 (45 N. W. 356).

The case of *Gristock* v. *Insurance Co., supra,* is cited with approval in *Hartford, etc., Ins. Co.* v. *Cartier,* 89 Mich. 41 (50 N. W. 747).

In *Pollock* v. *Insurance Co.,* 127 Mich. 460 (86 N. W. 1017), notice was given to the agent of the insurer of the proposed removal of the insured goods to another building, and the company was held bound, though the consent was not indorsed on the policy. The court referred to *Maryland Fire Insurance Co.* v. *Gusdorf,* 43 Md. 506, and quoted from the opinion as follows:

"Since that decision the doctrine of equitable estoppel has, especially in insurance cases, been extended and applied at law as well as in equity, by adjudications of the courts of last resort in many of the States, and the current and weight of judicial precedent and authority in this country have established the proposition that, in such cases, the estoppel is equally available in either tribunal. The Supreme Court, in *Wilkinson's Case,* 13 Wall. 222, has also in a very able opinion sustained this position. * * * 'The principle is that, where one party has, by his representations or his conduct, induced the other party to a transaction to give him an advantage, which it would be against equity and good conscience for him to assert, he would not, in a court of justice, be permitted to avail himself of that advantage.' This proposition, thus sustained by the modern decisions, and founded in reason and justice, they add, does not admit that

the written instrument may be contradicted by oral testimony, but goes upon the idea that it may be shown by such testimony that the written instrument cannot be *lawfully used* against the party whose name is signed to it."

The opinion in *Pollock* v. *Insurance Co., supra,* concludes as follows:

"There could be no possible question about the authority of Gaukler to consent to the removal of these goods, and, he and the company having knowledge of their removal, it became the duty of the company to do one of two things—either consent to the removal, or cancel the policy and return the unearned premium. It could not retain the premium, and thus profit by it in case there was no loss, and, the moment there was a loss, deny any liability, though still retaining the premium. *McGraw* v. *Insurance Co.,* 54 Mich. 148 (19 N. W. 927); *Haire* v. *Insurance Co.,* 93 Mich. 481 (53 N. W. 623, 32 Am. St. Rep. 516); *Ætna Ins. Co.* v. *Maguire,* 51 Ill. 342; *Goit* v. *Insurance Co.,* 25 Barb. [N. Y.] 189; *Hathorn* v. *Insurance Co.,* 55 Barb. [N. Y.] 28."

The case of *Dowling* v. *Insurance Co.,* 168 Pa. 234 (31 Atl. 1087), is in many respects like the one before us. That case was assumpsit upon a policy of fire insurance. At the trial it appeared that the policy was for $5,000 covering a dwelling house and household furniture. The building was described in the policy as being "occupied by insured as a dwelling house only." The evidence showed that the house was used as a boarding house, but that the agent who wrote the policy was fully informed of this fact by plaintiff, and that plaintiff did not read the policy until after the trial. Further facts appear by the charge of the court. We quote from the opinion (page 239 of 168 Pa., page 1087 of 31 Atl.):

"The fraud or mistake of an insurance agent within the scope of his authority will not enable his principal to avoid a contract of insurance to the injury of the insured who acted in good faith, and the fraud

or mistake of the agent may be proved by parol evidence notwithstanding it is provided in the policy that the description of the property shall be a part of the contract and a warranty by the insured. This is clear upon principle, and it is abundantly sustained by authority. *Smith* v. *Farmers' & Mechanics' Mutual Fire Ins. Co.,* 89 Pa. 287; *Eilenberger* v. *Protective Mutual Fire Ins. Co.,* 89 Pa. 464; *Susquehanna Mutual Fire Ins. Co.* v. *Cusick,* 109 Pa. 157; *Kister* v. *Lebanon Mutual Ins. Co.,* 128 Pa. 553 [18 Atl. 447, 5 L. R. A. 646, 15 Am. St. Rep. 696]; *Meyers* v. *Insurance Co.,* 156 Pa. 420 [27 Atl. 39]. This case is much stronger for the plaintiff than those above cited. In all of these, written applications had been signed by the insured, and in each case the application was made a part of the contract. In this case no written application was made, and the policy was written by the agent and not read by the insured until after the fire. The building insured was built for and used as a boarding house, and was erroneously described in the policy as 'occupied by the insured as a dwelling only.' The testimony was clear and uncontradicted that there was no mistake or deception on the part of the plaintiff, who fully and accurately described the property to the agent as a boarding house and spoke to him of its capacity and use. It was seen and examined by the agent, and its use, which was apparent, was fully known to him. The misdescription was his act alone, in the face of light and knowledge, and was unknown to the insured until after the loss occurred. The defendant cannot be released from its contract because the plaintiff acting in good faith accepted without examination the policy written by its agent."

See, also, *Westchester, etc., Ins. Co.* v. *Earle,* 33 Mich. 143; *Kitchen* v. *Insurance Co.,* 57 Mich. 135 (23 N. W. 616, 58 Am. Rep. 344); *Carpenter* v. *Insurance Co.,* 61 Mich. 635 (28 N. W. 749); *Cronin* v. *Fire Ass'n,* 119 Mich. 74 (77 N. W. 648).

In the instant case the jury by their verdict have found that defendant's agent was truly informed of the use which was to be made of the building. The record shows he had authority to write insurance on

a building so used. He issued a policy which did not truly state the use to be made of the building. Applying the principles of law stated in the opinions we have cited to the instant case, we think it should be said the company is now estopped.

Judgment is affirmed.

BROOKE, C. J., and MCALVAY, KUHN, STONE, OSTRANDER, BIRD, and STEERE, JJ., concurred.