## WILLIAMS *v.* QUEEN'S INS. CO.

### *(Circuit Court, D. Connecticut. June 24, 1889.)*

**1. INSURANCE—CONDITIONS OF POLICY—PROOFS OF LOSS.**

An insurance policy provided that on a loss the policy-holder should, "if required, produce the certificate of a magistrate or notary public nearest to the place of fire, * * * stating that he has investigated the circumstances of the fire, and believes that the owner has, without fraud, sustained loss to the amount claimed." The company's agent replied to proofs of loss sent by plaintiff, the policy-holder, which contained a certificate that such proofs were insufficient, because they did not meet the requirements of the policy in regard to the location of the magistrate or notary signing the certificate, and said: "For the above reasons, we decline to accept the proofs * * * as sufficient, under the requirements of the policy." Plaintiff thereafter sent the certificate of the nearest justice of the peace, though there were notaries who were materially nearer. *Held*, that there was a sufficient requirement of the certificate mentioned, which plaintiff recognized.

**2. SAME.**

Under such requirement, the certificate of the nearest officer of the classes named, whether magistrate or notary, is necessary.

3. SAME—WAIVER.
    The policy also provided that plaintiff should, if required, submit to an examination under oath. *Held*, that the mere examination of plaintiff under oath was not a waiver of defendant's right to require the certificate, where it appears that plaintiff knew that he was still required to furnish proofs of loss.

4. SAME.
    The mere delay by the company of 37 days before requiring the certificate is not a waiver thereof, where it appears that the policy was not payable until 60 days after proofs of loss were received by the company, and plaintiff does not claim that the delay prevented him from obtaining the required certificate so as to begin suit at the expiration of the 60 days, or that any other injury or detriment was occasioned by the delay

At Law.  On motion for new trial.

Action on fire insurance policy by Russell Williams against Queen's Insurance Company.

*Franklin Chamberlin*, for plaintiff.

*George A. Fay* and *T. E. Doolittle*, for defendant.

SHIPMAN, J.  This is a motion for a new trial of an action at law, upon a policy of fire insurance upon a stock of merchandise in the city of Meriden.  The policy provided, among other things, that the assured should, within 60 days after the fire, render an account of the loss, signed and sworn to, stating how the fire originated, giving copies of the written portions of all policies thereon; also the cash value and ownership of the property and the occupation of the premises; and, whenever required, should submit to examinations under oath, by any person designated by the company, * * * and should, "if required, produce the certificate of a magistrate or notary public nearest to the place of the fire, not concerned in the loss as a creditor or otherwise, or related to the aforesaid, stating that he has investigated the circumstances of the fire, and believes that the owner has, without fraud, sustained loss to the amount claimed."  On September 12, 1885, and during the life of the policy, the insured property was seriously injured by fire.  The origin of the fire was not satisfactorily ascertained, and immediately thereafter an investigation was had, nominally by the municipal authorities of Meriden, under the provisions of its charter, which, the plaintiff claimed, was really conducted by the various insurance companies which were concerned in the loss.  Upon this investigation the plaintiff was examined at length, under oath.  The examination was conducted by an agent of one of the companies, who, as the plaintiff claimed, represented also the defendant.  Any participation in the investigation was denied by the defendant.  About September 30, 1885, the plaintiff voluntarily made out and sent to the defendant proofs of loss upon a blank which was furnished by its local agent.  George W. Smith, Esq., filled out the proofs of loss, and, as notary public, filled out and signed the magistrate's certificate, which was a part of the blank form.  He was neither the nearest disinterested magistrate nor the nearest disinterested notary public to the place of the fire.  These proofs were received by the defendant on September 30th, and were received by Mr. E. G. Richards, who was special agent of the company, and had charge of all losses in the New England states, on the week after

they went to the New York office. On November 6th he wrote to the plaintiff that the proofs were "incomplete and insufficient, inasmuch as they do not meet the requirements of the policy contract, first, as to the requirement of a certificate of a magistrate or notary public nearest to the place of the fire. * * * For the above reasons * * * we decline to accept the proofs you have offered as sufficient under the requirements of said policy." On December 14, 1885, the plaintiff wrote to the defendant: "If you will return my proofs of loss, I will see if I can get them in the way you want them." They were returned to the plaintiff, and were retained by him. On September 12, 1886, and before the commencement of this suit, he, by his counsel, sent to the attorney of the defendant a magistrate's certificate, of about that date, of John Q. Thayer, the nearest justice of the peace to the place of the fire. At least two disinterested notaries were materially nearer the burned store.

The plaintiff requested the court to charge the jury as follows:

"(1) That the certificate of a magistrate or notary public nearest the place of fire, and not concerned in the loss as a creditor or otherwise, had not been required. (2) If the letter of defendant's agent of November 6th contained such requirement, then that the plaintiff might elect from which class, notary public or magistrate, he would procure such certificate, and, having furnished the certificate of the nearest justice of the peace, he had conformed to the requirements of the policy. (3) That by the examination of the plaintiff under oath, in accordance with the policy provision, the defendant had waived its right to require the certificate of a magistrate or notary public. (4) That having made no requirement for the certificate of a magistrate or notary public until after November 6th, 54 days after the fire, and 37 days after the proofs of loss were received, the defendant should be held for this reason to have waived its right to require such certificate."

The court did not so charge, but upon the admitted facts in the case, in regard to the non-production of a disinterested magistrate's certificate, who was nearest to the place of the fire, directed a verdict for the defendant.

1. That a certificate of a magistrate or notary was not required. By the terms of the policy it was not incumbent upon the assured to furnish such a certificate, "unless required." The proofs contained a certificate, but not of the required officer, if a certificate was to be given. The company's agent replied that the proofs were incomplete and insufficient, because they did not meet the requirements of the policy in respect to the location of the magistrate or notary, and said: "For the above reasons, we decline to accept the proofs you have offered as sufficient, under the requirements of the policy." In substance and effect, though not in formal and technical terms, the letter informed the assured that the certificate of the nearest magistrate or notary was required. The requirement was understood, and was attempted to be complied with, by the plaintiff. In view of the manifest call which is contained in this letter for the certificate from the person specified in the policy, a call the meaning of which the plaintiff fully recognized, it cannot be said that the certificate had not been required.

2. That the plaintiff had his election from which class of officers he

would procure the certificate, and the certificate of the nearest justice, though he was materially more remote than the nearest notary, would be sufficient. Such a construction is manifestly adverse to the accomplishment of the object to be effected by this old and familiar provision in fire policies, which was to obtain the opinion of an unbiased public officer, who, from his location, might be presumed to have the most intimate knowledge of the assured, of the origin of the fire, and of the amount of the loss. It would be a strained construction to hold that when three classes of officers are named, as is now frequently the case, the assured has the privilege of selecting the nearest member of one of these classes, although numerous qualified members of each of the other classes were materially nearer to the place of the fire. There is no notary public in many of our agricultural towns, and the construction of the plaintiff would permit the assured in such a town to pass by all the magistrates in his neighborhood, and seek a notary in some adjoining town, whose ignorance of the circumstances of the fire would render his certificate alike attainable and destitute of information to the insurer. The meaning of the clause is that the certificate of the member of the named classes of officers who is nearest to the place of the fire shall be furnished when it is required. Such is the tenor of the decision in *Gilligan* v. *Insurance Co.*, 20 Hun, 93, affirmed, but without a written opinion, in 87 N. Y. 626. The facts in regard to the location of the respective officers, so far as they can be learned from the statement, corresponded with those of this case.

3. The alleged waiver of the right to require a certificate by reason of the examination of the plaintiff, or by reason of the defendant's delay in making the requirement. The policy in this case expressly provided that, whenever required, the asssured should submit to an examination under oath, and, if required, should produce a certificate. He was to do either, and he was also to do both "when required," and there is nothing in the terms of the policy from which it can be inferred that a requirement of one act is an abandonment of or a waiver of the right to require the assured to perform the other act. There may be facts in particular cases which justify a court or jury in inferring therefrom that the company had substituted the examination for the proofs of loss, but the mere fact that an examination was had at the instance of the insurance company is not a waiver of its right to require proofs or a certificate. It is not contended that proofs of loss are waived by an examination, if they are called for, and it may be added that the whole history of the case shows that the plaintiff knew that he was required in fact to furnish the customary proofs of loss. He obtained a blank from the local agent, whom he asked to assist him, and whose advice he solicited and obtained in regard to the manner in which some of the details of the proofs should be made.

It would also be improper to hold, as matter of law, that a delay of 37 days before a request is made for a magistrate's certificate is an absolute waiver of the right to require such a certificate, for that would be a declaration that whatever might be the pressure of business upon the

company, or whatever might be the engagements or health of the officers, the circumstances of each loss must be so far ascertained before the expiration of 37 days that the company must know whether the circumstances required proof of absence of fraud. The most that can be claimed in regard to this part of the case is that the delay was a fact from which a jury could infer a waiver. The strongest case upon this subject in favor of the plaintiff is that of *Keeney* v. *Insurance Co.*, 71 N. Y. 396, in which it was held that a silence of five weeks after the proofs had been furnished was evidence from which alone the jury had a right to find that the defects in the proofs had been waived. The circumstances of that case were peculiar. Some of the objections of the insurance company were deemed by the court to be groundless, and others to be frivolous. No reason was shown for the delay, and the objections were evidently considered to be an after-thought, and not the real reason upon which payment was refused. The decision is not a guide for the decision of other cases in which the circumstances are different. Prolonged and unexcused silence by an insurance company after the reception of proofs of loss is held to be evidence of a waiver of defects or technical mistakes in the proofs, upon the ground that good faith requires of the company to notify the insured of such defects and thus enable him to correct them, and not mislead him to his hurt, by an unnecessary delay; and that if the company did not do what good faith required, and misled the assured, it must be held to have regarded the defects as unworthy of consideration, and so to have waived it. The reason upon which the doctrine of implied waiver from silence and that of estoppel *in pais* is based is the same. It is that the conduct of the insurance company has misled the assured, and induced him to omit doing, or has prevented him from doing, what he might have done, and therefore that the effect of its setting up the defect would be, by a breach of good faith, to work an injury upon the adverse party. It is important to notice that this implied waiver is another name for estoppel, because the principle of estoppel is that the person in whose favor the estoppel operates would, except for its aid, be defrauded; and where no injury can have arisen from the act of the insurance company there is no estoppel. It is said, in a well-considered case, that the waiver or estoppel " can never arise by implication alone, except for some conduct which induces action in reliance upon it to an extent that renders it a fraud to recede from what the party has been induced to expect." *Insurance Co.* v. *Fay*, 22 Mich. 467. It might be added that the waiver or estoppel may arise, if the conduct of the insurance company induces an inability to act in consequence of it, which produces an injurious effect. In this case the policy was not payable until 60 days after proofs of loss were made and received by the insurance company. Suit could not be commenced until the policy was payable. *Gauche* v. *Insurance Co.*, 10 Fed. Rep. 347. It is not claimed that the delay of the company prevented the plaintiff from obtaining the required certificate, or from obtaining it in time to commence his suit at the expiration of the 60 days. If the defendant had a right to require a certificate, the delay

wrought no injurious effect upon the plaintiff. Where there is no claim of injury to the insured, or that he has been misled or deprived of an advantage by a delay which did not affect the time when the policy was payable, there is no reason or propriety in submitting to a jury the question of implied waiver from unexcused delay. The motion is denied.