65   301
71   926
65   301
72    50
72    63
65   301
73    69
73   479

NEW ORLEANS INSURANCE ASSOCIATION *v.* M. C. MATTHEWS.

1. FIRE INSURANCE. *Stipulation against waiver of conditions of policy.   Effect
   as to waiver of proof of loss.*

   It having been settled by interpretation of the courts of many States that a
   stipulation in a policy of fire insurance, providing that there shall be no
   waiver of any of the terms or conditions of the policy, unless waiver shall
   be indorsed thereon, does not apply to the conditions thereof to be per-
   formed after a loss has occurred, in order to enable the assured to sue on
   his contract, such as giving notice and furnishing preliminary proofs of
   loss, it must be supposed that such stipulation, when inserted in a policy
   of insurance, is with the understanding that it does not apply to what is
   required of the assured after the occurrence of loss, and does not prevent
   his claim of a waiver of proof of loss by the acts of the agent of the com-
   pany.

2. SAME. *Waiver of proof of loss.   Whether a question for court, or for jury.*

   When the assured, in a policy containing such stipulation, has suffered loss,
   and, in an action to recover upon his policy, relies upon a waiver of the
   proofs of loss therein required, the question of waiver is one for the de-
   termination of the court, if it be manifest to the judge, upon the undis-
   puted facts, that the assured should not have been, as a reasonable person,
   misled into omitting to make proof of his loss, by the conduct of the agent
   or agents of the insurer; but if there be dispute as to the facts upon which
   the claim of waiver is based, or as to their just influence upon the assured,
   the question of waiver should be submitted to the jury, under proper in-
   struction.

3. Same. *Waiver of proof of loss. Conduct of adjuster. Case in judgment.*

An adjuster a few days after the burning of an insured building repaired to the scene, obtained from the owner the character and dimensions of such building, secured a builder's estimate of the cost of rebuilding and offered the assured that amount less the difference between the value of the old building and a new one of the same character. The assured refused to accept the offer and demanded the full amount of his policy. The adjuster left, but returned twice within a few days and renewed his former offer, each time the result being the same, the only disagreement being as to the amount thereof. In the course of six months, the adjuster wrote several times to the assured, renewing his first offer and making other offers, none of which were accepted; the owner still demanded the full face value of his policy. No proofs of loss were ever made. The assured brought an action on his policy. *Held,* that upon the facts above set out the trial judge was justified in leaving to the jury the question whether the insurance company had not waived its right to proofs of loss; and such facts are sufficient to sustain a verdict that there was a waiver.

4. Same. *Waiver of proof of loss. What does, and what does not constitute.*

In such case, investigation into the circumstances of a loss, and an effort to agree with the insured as to the amount of his loss, and an offer to pay a sum less than the amount claimed, will not constitute a waiver. If nothing more than this had appeared in the case above stated, it would have been the duty of the court to direct the jury to find for the insurer; but there was more in the facts there presented, which may have been well calculated to mislead the average man into the belief that he need not make any further proof of his loss than was known to the insurer.

Appeal from the Circuit Court of Copiah County.

Hon. T. J. Wharton, Judge.

This is an action on a policy of fire insurance brought by M. C. Matthews against The New Orleans Insurance Association.

It appears that defendant, in February, 1885, issued plaintiff a policy of insurance against loss by fire on a certain wooden store building in the town of Hazlehurst. This policy contained a stipulation that, "In case of loss the assured shall give immediate notice thereof, and shall render a particular account of said loss under oath, stating the time, origin and circumstances of the fire, the occupancy of the building insured or containing the property insured, other insurance, if any, and copies of all policies; the whole value and ownership of the

property and the amount of the loss or damage; and shall pro-
duce the certificate under seal of a magistrate, notary public or
commissioner of deeds nearest the place of the fire and not con-
cerned in the loss or related to the assured, stating that he had
examined the circumstances attending the loss, knows the char-
acter and circumstances of the assured, and verily believes that
the assured has, without fraud, sustained loss on the property
insured to the amount claimed by the assured." The policy
also contained another stipulation as follows : " It is further ex-
pressly covenanted by the parties hereto that no officer, agent
or representative of this association shall be held to have waived
any of the terms and conditions of this policy unless such
waiver shall be endorsed hereon in writing."

On Nov. 16, 1885, the house insured was burned. None of
the requirements of the first stipulation above set out was ever
complied with.

On Oct. 1, 1886, this action was brought. On the question
whether there was a waiver of the provisions of the condition in
relation to proofs of loss, the evidence was as follows :

L. H. Matthews, a witness for plaintiff, testified that he was
the agent of plaintiff, and managed her business ; that Gillaspie,
agent and adjuster of the insurance company, came to Hazle-
hurst within a week or ten days or more after the fire to adjust
the loss ; that Gillaspie employed one Gilland, a carpenter, whom
he caused to be sworn, to estimate the cost of replacing the
building burnt by a new one ; that measurements were taken
under witness' direction, and all the information in his posses-
sion as to the house destroyed was furnished by witness to Gil-
laspie ; that Gilland estimated that a new house of same propor-
tions would cost $2183 ; that he told Gillaspie all he knew about
the origin of the fire ; that Gillaspie at first seemed to want to
settle on that valuation, to which witness agreed, when Gillaspie
said : " No, there is something else to do. He said they had the
right to put a new building there just like the old one ; but if
they did, the new building would be worth more than the old
one, and they wanted me to deduct the difference. I said it was
a total loss, and I ought to be paid for it." This witness further
testified as follows :

" *Q.* Did you make any other proof of loss?. If not, why not?

" *A.* I thought his coming down here and getting a mechanic and making an estimate, and both of us agreeing to it, was sufficient, and did not make any further proofs.

" *Q.* Explain fully why you did not make any further proofs.

" *A.* Because, when I gave them the dimensions of the house and we went into that estimate, I considered that proof of loss.

" *Q.* Upon what ground did Mr. Gillaspie decline to pay the loss?

"*A.* He wanted to leave it to an arbitration—wanted to let Mr. Gilland say what was the difference between that old house and a new one. I said the house was in good repair and was worth $2000 to me. I was not willing to let arbitrators say what difference there should be, because that house was as good as new to me.

" *Q.* What did Mr. Gillaspie say about requiring any other proof of loss?

"*A.* He never said a word."

The plaintiff introduced certain letters from the agents of the defendant, addressed to L. H. Matthews, agent of plaintiff, as follows:

.     " Vicksburg, Miss., March 29, 1886.

" We have your valued favor 27th inst., touching papers in the hands of our Captain G. We send your letter to him to Jackson by first mail, that he may comply with your request.

" Doherty & Gillaspie."

"Macon, Miss., April 1, 1886.

" Your letter to our office received, and I answer that we are strongly inclined to be accommodating and send you the estimate, to be copied for your use with the Pelican (Insurance Co.), but would like to hear from you first, to know what you are going to do as to our company? Do you make us concessions as a difference between a new house, as per Mr. Gilland's estimate, and an old one not architecturally in shape? I will make you an offer for our policy of $1000. Let me hear from you promptly.

"Yours truly,

"Doherty & Gillaspie,

" By W. M. Gillaspie."

"JACKSON, MISS., April 15, 1886.

"Your favor of the 12th inst. received on my return here this morning. You say the company is doing Mrs. M. a wrong to require her to go to law and lose $125, after having received her money for years under a contract to pay her $2000 in case of a loss. The contract is to pay her not two thousand dollars in case of a loss, it is to pay her exactly what the property destroyed was worth at the time it burns, not exceeding $2000, or the insurance. We might also reply that you are doing the company a big wrong to require them to go to law to keep from paying for property insured more than they should do.

"I am sure Mrs. M. is not taking into consideration the fact that lawyers are sometimes mistaken as to what they can do. Her lawyers have only one side of the story. If the company should go into court, but they don't want to do it, the case would not get out of the shackles of the law maybe for three or five years. And can she be certain of success? I will write you definitely in as short a time as possible, not more than five or six days.

"Yours truly,
"W. M. GILLASPIE."

"VICKSBURG, MISS., June 3, 1886.

"MRS. M. C. MATTHEWS, Hazelhurst, Miss.

"*Dear Madam*—Your favor yesterday just received and carefully noted. We agree with you perfectly that an amicable settlement is better in every way than litigation. Your proposition is for the two companies to pay you $1875, and then apportion same between themselves. This you will see is impracticable, for the reason that our policy contains conditions not in the other. But we will pay our proportion of whatever amount may be agreed on.

"If you will calculate the expense of litigation, and if you succeed in getting a judgment, as you will, you will not forget that the doubts are on your side of not collecting $1875, as the cash value of the house at the time of the fire; then, if it is appealed, there will be delays and costs added. We wish to avoid all this. We will write you again as soon as we can hear from the other company.           "Very respct.,
"DOHERTY & GILLASPIE,
"By W. M. GILLASPIE."

W. M. Gillaspie, witness for the defendant, and general agent and adjuster for defendant, testified as follows: "The first thing I did was to come down here and get the plans and specifications of Mrs. Matthews' building from Mr. Matthews, who occupied the building, and who was her agent. After I came here, I got a man who was engaged at the time in putting

up a brick building for Major Millsaps. I asked Mr. Matthews if he thought Mr. Gilland was competent, and if his estimate was satisfactory. He expressed no objection to his being engaged to make the estimate. After we had got the ground measurement and such information as was given us by Mr. Matthews as to the way the building was put up, we went forward and made the estimate, which we showed to Mr. Matthews. He said that certain things had been left out: show windows, skylights, front gallery. We then asked him to give us a corrected plan, embracing everything. He took the matter under consideration, and the next day he furnished us with a more detailed plan; and upon that we completed another estimate and submitted it to Mr. Matthews. Mr. Matthews said he could not settle by that if any depreciation was to be made between the value of the old building and a new one. He could not submit to that, because he considered the building worth to him the amount of the policy, and he thought he ought to be paid $2000. In other words, what he stated on the stand was correct.

We discussed it; I endeavoring to come to an understanding as to the value of the property and to get at a settlement. We discussed the whole matter, but came to no conclusion. I left then; but returned twice afterwards to try to settle the matter with Mr. Matthews; he standing to the amount of the insurance, and would make no concessions. Then occurred the correspondence; and there the matter ended."

The defendant moved the court to instruct the jury to find as in the case of a non-suit, because there was no evidence tending to show that proofs of loss were furnished, or that the same were waived. This the court refused to do. The cause was submitted to the jury, and there was a verdict for the plaintiff, and judgment accordingly. The defendant appealed.

*W. P. & J. B. Harris*, for the appellant.

1. If a party determines at the outset that he will insist on certain terms or sue, and the terms are rejected, it is inadmissible in law that he claim that any right or demand of the other party is lost by the rejection of the terms. If a party has determined, on entering into a negotiation, that he will have certain terms *nolens volens*, and if he cannot get them in the negotiation that

he will enforce them by suit, he must prepare to fortify himself for the suit by taking every necessary step to enable him to recover. He neglects them at his peril; he had time to prepare. Every offer to settle a claim of this kind, whether that offer relates to the basis of fixing the sum to be paid, or merely to the payment of a fixed sum, involves, necessarily, as well an offer to waive all other matters of possible dispute. If the offer is accepted the matter ends, but if rejected the waiver is rejected also. This is not more a matter of law than of common sense; and in a business world, as this is now, no man who undertakes to manage or settle anything can be heard to say that although he rejected the proposal, the proposer had nevertheless lost his right, or any right, by his rejected offer. *Courts will do nothing to deter parties from attempting peaceable settlement in an amicable spirit*, and it is one of the oldest and most approved of all rules, that an offer to settle, to compromise, whatever it may involve, if accepted, involves nothing if rejected. The parties remain in *statu quo*.

What Gillaspie did was in performance of a duty as an adjuster; the means he resorted to were appropriate; after he had ascertained the cost of a new building, he then and there fully explained to Matthews what he proposed to accomplish. What Gillaspie did in performance of his duty as adjuster, whether by Matthews' assistance, whether with or without his consent, constitutes no waiver, and no court and jury, certainly after *Ins. Co. v. Sorsby*, can make it so. If Matthews misinterpreted it the insurer is not to be affected by his mistake. What did Gillaspie say? What he said was that he would settle the loss and pay it, if settled on a particular basis. This offer, like the offer of the $10,000 in *Ins. Co.* v. *Sorsby*, was rejected, and everything it involved or proposed to waive or concede was rejected with it, and no court or jury can make the rejected offer a waiver. The worn-out phrase sometimes resorted to in avoidance of judicial responsibility, "A question particularly in the province of a jury to decide," is not to be taken as meaning that waiver is something so completely the subject of jury power that that reliable tribunal may make waiver out of any sort of material that may be presented to it. There is nothing peculiar about a waiver or an es-

toppel that puts it beyond the control of the court. True, it is for the jury to say whether a man of ordinary prudence and circumspection would have been mislead by some act or declaration tending to show a purpose to waive, or rather not to insist on the performance of a certain stipulation. But, first, the act must be such as is incompatible with a purpose to insist on the performance, or import clearly a disregard of the stipulation. It has been distinctly decided, however, that the means employed by an adjuster of losses, to fix the amount of loss as a guide for his principal, is not of this character, and again that an offer to settle rejected does not import such purpose. A jury cannot invest these acts and declarations with the force of waiver. It is difficult to see how this case can escape the influence of *Ins. Co.* v. *Sorsby*, 60 Miss., 313.

The conclusion of Matthews that his going with the mechanic and describing the old building was sufficient, was no better than the conclusion he formed that a total loss entitled him to the full sum for which he was insured. The getting of the dimensions from any other source would mean the same.

The letters were mere offers to compromise and an urgent persuasion to avoid litigation, and written several months after the transactions at Hazlehurst, after the attempt to settle at that time had completely failed by the obstinate refusal of Matthews to abate a jot in his demand—after he had plainly evinced the purpose to sue a few days after the fire. He had said plainly, "I intend to stand on my legal rights, and you can assert yours,"— a determination which required of him to take steps to fix the liability of the insurer whose terms of settlement he rejected. *He does not put the waiver on these letters.* They simply amount to efforts to move the plaintiff in her fixed determination—an effort which failed.

2. There is another question raised below of great importance and a vexed question. There is in the face of the policy, and therefore known to the assured, first: a detailed stipulation and requirement to fix liability, and among them is the proof of loss, and at their close the stipulation that no agent is authorized to waive any of the foregoing except in writing endorsed on the policy.

How this stipulation is to be regarded, its value and effect is discussed in *Conover* v. *Ins. Co.*, 42 Am. Rep., 619 and the note at page 21.

We have up to this point considered whether there was a waiver, not whether it was authorized.

There are cases to the effect that a general agent of an insurance company has the inherent power to waive breaches of conditions and requirements, and cannot be restricted. True, he may settle, pay or compromise, and this involves waiver. But the better view seems to be that his powers may be restricted by conditions in the face of the policy, or brought to the actual knowledge of the insured.

The particular stipulation as to writing was inserted obviously to avoid the confusion and uncertainty into which the subject of implied waiver, not amounting to estoppel as defined in the books, had become involved by judicial casuistry as well as waiver expressed by parol.

*W. P. Harris* argued the case orally.

*Thompson & Sexton*, for the appellee.

1. It is for the jury to say whether the facts and circumstances, any one alone or all combined, amount to a waiver.

3 Sutherland on Damages, 71, and cases cited; 2 Wood on Insurance, 1116; Ib., 952, 936, note; Ib., 985, 986, note. See, also, *Swan* v. *L. L. & G. Ins. Co.*, 52 Miss., 704; *Rivara* v. *Queens Ins. Co.*, 62 Miss., 720.

We do not apprehend that this court will invade the province of the jury, even though counsel for appellant has denominated the phrase, "A question particularly in the province of the jury to decide," as "worn out," and "as sometimes resorted to in avoidance of judicial responsibility."

What amounts to a waiver?

(1.) Any act which has the effect to mislead the insured into the belief that the proof will not be required.    3 Sutherland on Damages, 71.

(2.) Applying for plan and specifications of the insured house.    *Webster* v. *The Phœnix Insurance Company*, 36 Wis., S. C., 67; 17 Am. Rept., 479.    See Bigelow on Estoppel, 578, quoted in *Webster* v. *The Phœnix Insurance Company*, supra.

(3.) An adjustment. *Levy* v. *Peabody Insurance Company*, 10 W. Va., 560; S. C., 27 Am. Rep., 598. See particularly the note at the end of the case in the American Report.

(4.) Investigation by an agent. 4 Wait's Actions and Defences, citing *Owen* v. *Farmers' Insurance Company*, 57 Barb. (N. Y.), 518, and *Roumage* v. *Mechanics' Insurance Company*, 13 N. J., 110. True that in Sorsby's case, 60 Miss., 302, it was decided that (in the Hanover case) where the insured had not acted upon the idea of a waiver of proofs, and where the company had called for more perfect proofs, an investigation by itself was not a waiver. See 2 Wood on Insurance, 936; Ib., 940; Ib., 985; Ib., 988.

(5.) Placing objections to payment on other grounds. *Sorsby's Case* v. *Home Insurance Company*, 60 Miss., top of page 314; Flanders on Fire Insurance, 542, and authorities there cited.

See also *Franklin Insurance Company* v. *Updegraft*, 43 Penn. St., 350; *Insurance Company* v. *Parisot*, 35 Ohio St., 35; *Noyes* v. *Washington County Mutual Insurance Company*, 30 Vt., 659; *The N. & N. Y. T. Company* v. *West Mass. Insurance Company*, 34 Conn., 561; 102 Penn. St., 529; Ib., 568; May on Insurance, sec. 468; *McPike* v. *The Western Assurance Company*, 61 Miss., 37; *Insurance Company* v. *Sorsby*, 60 Miss., 302.

We desire to say in regard to the last case cited (Sorsby's case), that the distinguishing feature therein consists in the fact that the insurance company, upon the receipt of Sorsby's defective papers, " promptly wrote to the insured, calling his attention to their insufficiency, and referring him to the condition of his policy " as indicating the proofs required. It is said by the court with distinctness that Sorsby did not understand that the proofs had been waived. " He was not misled in any way by what occurred, and did not consider that he was relieved from his obligation to make the proofs of loss."

We see by reference to the testimony in this case that the jury were not only warranted in concluding that the waiver was established, but that their verdict was in accordance with the weight of the evidence. We see that the proof makes out each of the foregoing five points, either of which alone, according to

authority, constitutes a waiver.  Their conjoint effect is irresistible.

We do not claim that the insurance company lost any right or demand because of the rejection of its terms of settlement; but we do insist that it so dealt with the subject-matter of the contract in suit, it so conducted itself toward Matthews that the insured was misled and deceived, and that, too, as the jury have found, or had a right to find, under circumstances sufficient to charge the insurance company with notice that Matthews was misled and deceived, and that it wholly failed to undeceive him, thereby waiving proofs of loss.

Mr. Gillaspie was under a duty to speak, in our judgment, if he intended to insist upon want of proofs of loss, and having kept silent when he should have spoken, his company will not be permitted to take any advantage of his silence.

2.  We come now to the second argument on this subject of waiver; the contention that under the terms of the policy the waiver, if made, was void because not in writing.

The terms of the policy, upon the subject of a writing, like any other stipulation thereof may itself be waived.  Surely the validity of a contract must be determined by the law and not by the stipulations of the parties; although the parties may agree that a waiver shall alone be in writing, yet the law is to the contrary, and an insurance company may estop itself from insisting on proofs of loss by parol.

See *Home Ins. Co.* v. *Gaddis*, 10 Ins. Law Journal, 774, 777; *Westchester F. Ins. Co.* v. *Earle*, 33 Mich., 153.

Parties cannot bind their hands by an agreement that will prevent them from having afterwards the full power to contract with themselves which they would have had but for their previous agreements.  A change in the terms of a contract by parol, between two parties able to contract, would be binding in spite of a provision to the contrary in the contract thus altered, no question of the statute of frauds intervening.

Certainly any thing which a man may contract to do or not to do, he may estop himself by his conduct in the same way.  A man may estop himself by his conduct in a matter which would seem to infringe the statute of frauds; he may loose his lands by

his conduct, though he cannot contract it away except in writing. If the doctrine of estoppel arises superior to the statute of frauds itself, the law of the land, why may it not override any question, or terms, involved in a private contract? See *Gans* v. *The St. Paul F. and M. Ins. Co.*, 43 Wisconsin, 113.

The second answer to the proposition is that the terms of the instrument under consideration have no application to the question of proofs of loss. It is said in the case of *Blake* v. *Exchange Mut. Ins. Co.*, 12 Gray, 265, by the Supreme Court of Massachusetts: " It seems to us that the question is not as " to the provision of the contract, but as to the performance of " the provision. Plaintiff is not seeking to set up a contract " from which a material provision has been omitted by the oral " consentment of the officers of the company."

We are told by the Supreme Court of Maryland in the case of *Franklin Fire Ins. Co.* v. *Chicago Ice Co*, 36 Md., 102, 119, 120, " According to our construction of the last clause in the " eighth condition of the policy, it refers to those conditions and " provisions of the policy which enter into and form a part of " the contract of insurance, and are essential to make it a bind- " ing contract between the parties, and which are properly desig- " nated as conditions; and that it has no reference to those " stipulations which are to be performed after a loss has occurred; " such as giving notice and furnishing proofs of loss. These are " no conditions inherent in the contract itself."

And both of these courts were considering the very question now before us, and had the same provision in the policy requiring, or attempting to require, all waivers in writing.

The same doctrine is re-announced and emphasized in the case of *Rokes* v. *Amazon Ins. Co.*, 51 Md., 512.

*R. H. Thompson*, for the appellee, made an oral argument.

CAMPBELL, J., delivered the opinion of the Court.

It was decided by the Supreme Court of Michigan, in *Westchester Fire Ins. Co.* v. *Earle*, 33 Mich., 143, that " there can be no more force in an agreement in writing not to agree by parol than in a parol agreement not to agree in writing. Every such agreement is ended by the new one which contradicts it."

If this is true, it would seem that the provision in the policy that there could be no waiver of its terms and conditions "unless such waiver shall be endorsed hereon in writing," was ineffectual. Be this as it may, it has been frequently decided that " such a stipulation applies only to those conditions and provisions in the policy which relate to the formation and continuance of the contract of insurance, and are essential to the binding force of the contract while it is running, and does not apply to those conditions which are to be performed after the loss has occurred, in order to enable the assured to sue on his contract, such as giving notice and furnishing preliminary proof of loss." *Carson* v. *Jersey City Ins. Co.*, 43 N. J. L. (14 Vroom), 300; *O'Brien* v. *Fire Ins. Co.*, 52 Mich., 131; *Franklin Fire Ins. Co.* v. *Chicago Ice Co.*, 36 Md., 102; *Blake* v. *Ex. Mut. Ins. Co.*, 12 Gray, 265; *Indiana Ins. Co.* v. *Capehart*, 108 Ind., 270; *Roker* v. *Amazon Ins. Co.*, 51 Md., 512.

In view of this interpretation by the courts of such a condition in a policy, it must be supposed to have been inserted with the understanding that it did not apply to what was required of the insured after a loss had occurred, and did not prevent the claim of a waiver of proof of loss by the acts of the agent of the company.

Was there in this case evidence of a waiver sufficient to be submitted to the jury, and to sustain the finding that there was? If the court can affirm confidently that the insured should not, as a reasonable person, have been misled, it should not be left to the jury, but should be decided by the court. If this cannot be affirmed, either because of dispute as to what occurred, or doubt as to its just influence on the insured, it should be submitted to the jury under proper instruction. Where it appears that the insured was not misled, all idea of waiver is excluded. That the insured claims to have been misled signifies little, and is not the criterion by which to determine the question, which is: Was what occurred, and is relied on as a waiver, sufficient to mislead the " average man " into the belief that he was relieved from the obligation to do more than he did?

*McPike* v. *Western Ass. Co.*, 61 Miss., 37.

Doubtless in every case of failure to make proof, or do any-thing required of him after a loss, the insured might truly claim to have been misled; but he may have misled himself, or have neglected to do what he should from consideration quite inde-pendent of anything done or said by the insurer or its agents. The question is, was the insured, as an ordinary person, reason-ably justified in his course of inaction by what occurred between himself and the insurer? If this be a matter for fair disputa-tion, about which men might reasonably differ, it should be left to the jury; otherwise not. We repudiate the proposition that it is always for the jury to say whether or not there has been a waiver. When there is evidence to be passed on by a jury it is to find upon it, of course; but if the presiding judge can say that upon the undisputed facts there is no ground for dispute about a waiver, he should decide the contrary. We know no peculiarity about cases of this character to distinguish them from others.

We reaffirm our announcement made in *Insurance Company* v. *Sorsby*, 60 Miss., 302, that " the company is not to be preju-diced in its defence because its agent promptly went to the scene of the fire, and pursued every allowable method of inves-tigation of the loss, and tried ineffectually to come to an under-standing with the insured. This would be to punish for an effort to perform duty."

Investigation into the circumstances of a loss, and an effort to agree with the insured as to the amount of his loss, and an offer to pay a sum less than the amount claimed will not consti-tute a waiver. There must be more than this; and where this alone appears, the jury should be told to find for the insurer. Waiver which rests upon the idea of estoppel cannot be predi-cated of mere performance of duty or exercise of right, or offer of compromise by the insurer; and this view should be firmly maintained by the courts.

If the claim of a waiver in this case rested alone on what occurred when Gillaspie, the agent, was in Hazlehurst soon after the fire, it would be manifest that the issue should be decided for the insurer; but the testimony of Gillaspie shows that he made several visits to Hazlehurst, "to try to settle the matter

with Mr. Matthews.    He standing to the amount of his insurance and would make no concessions." It thus appears that the controversy between Matthews and Gillaspie on his first visit after the fire was as to the value of the building, and the deduction that should be made because it was an old one, and this controversy was adjourned and renewed on the repeated visits of Gillaspie for the purpose of " a settlement." It further appears that letters were passed between the parties which sustain the proposition that the only matter of difference was as to the value of the old building and how much the insurer should pay. It may be that this protracted negotiation and the discussion between the parties, during which the liability of the insured for the loss was assumed and recognized, and the only difference was as to the sum to be paid, was well calculated to mislead the average man into the belief that he need not make any further proof of loss than was known to the insured. The circuit judge was of opinion that it should be left to the jury, and we are unwilling to disturb the judgment, which is accordingly.

*Affirmed.*