LIVERPOOL & LONDON & GLOBE INSURANCE CO. v. J. K. SHEFFY.

1. FIRE INSURANCE. *Consent to additional insurance. Power of agent.*

The power of one who receives applications, issues policies, collects premiums and otherwise acts as a general agent, to make a contract of insurance, involves the power to modify the same by a·subsequent agreement as to additional insurance on the same property.

2. SAME. *Additional insurance. Parol waiver by agent.*

A clause in a fire insurance policy which requires written consent for additional insurance to be indorsed thereon, like other provisions of the contract, may be modified or waived by a subsequent parol agreement by an agent of the insurer. *Insurance Co.* v. *Bowdre*, 67 Miss., 620, cited.

3. SAME. *Iron safe clause. Preserving inventory and books.*

A clause in an insurance policy requiring the assured to keep a set of books showing a record of his business, including all purchases and sales, and to preserve the same, together with an inventory, in a fire-proof safe, is complied with if an inventory, taken at the time of the insurance, is so preserved, together with a set of books showing all purchases, sales, etc., *beginning with that date.* It is immaterial that such books contain mere footings of accounts from prior books kept in the business, which are not so preserved, being destroyed by fire.

FROM the circuit court of Bolivar county.

HON. R. W. WILLIAMSON, Judge.

Action by·appellee against appellant on an insurance policy for $2,500, on a stock of merchandise. and a store building destroyed by fire. Defendant pleaded the general issue, and, among other things, gave notice of two special defenses, namely:

1. That assured procured additional insurance' upon the property covered by the policy, without the written consent of defendant indorsed thereon.

2. That he failed to keep a set of books, showing a record of his business, securely locked in a fire-proof safe at night

when the store mentioned in the policy was not open for business. On these defenses a forfeiture of the policy was insisted upon.

Plaintiff recovered judgment for the full amount claimed. Motion for new trial overruled. Defendant appeals. The opinion contains a further statement of the case.

*Moore & Jones,* for appellant.

1. One dealing with an agent, knowing that he is acting with limited authority, and is transcending his powers, cannot hold the principal; and it is immaterial whether the agent is general or special. 2 Wood on Ins., 930; 33 N. Y., 730; 73 *Ib.*, 10; 133 *Ib.*, 356; 153 Pa., 257; 46 Minn., 471; 101 Ill., 621; 25 At. Rep., 1124; 51 N. W. Rep., 455; 52 *Ib.*, 754. Many authorities holding the contrary have been overruled.

If a parol waiver of the condition is good, we still submit that there is nothing in the case upon which to predicate such waiver. No waiver is good unless it is shown that all the facts were known. May on Ins., § 506; 30 Pa., 311; 9 Cush. (Mass.), 470; 12 Vt., 366; 133 N. Y., 356. As to parol waiver by agent, see 2 Biddle on Ins., § 1081.

2. The condition of the policy requiring the accused to have a set of books showing a record of his business, and to keep them locked in a fire-proof safe at night, was not complied with. Opening a new set of books shortly before the fire, with only the balances brought forward from the old books, could afford but little information as to the condition of the business. The obvious intent of such a clause is to obligate the assured to keep a complete record of his business, so that, in the event of a fire, the insurer may have a safe guide for the adjustment of the loss. When a loss occurs, the insurer, like a buyer of goods, is entitled to a full and fair showing as to the character and value of the property. He is at a disadvantage, and is entitled to contract for a strict showing, to prevent fraud and imposition. Hence the importance of the iron safe clause. On this point the authori-

ties are meager, but we refer to *Insurance Co.* v. *Wilkerson,* 53 Ark., 353.

*Chas. & A. Y. Scott,* for appellee.

1. This iron safe clause is a new dodge, resorted to for the purpose of defeating policy-holders. In construing it the court should be governed more by the spirit than the letter. The policy did not go into effect until December 17, 1892, when it was delivered, though it was dated the sixteenth. Woods on Ins., § 13 *et seq.;* Richards on Ins., 147; 2 S. W. Rep., 151; 11 Lawyers' R. An., 598. When the policy took effect, a complete set of books were begun, and these were duly kept to the time of the fire, being preserved, with the inventory, in the iron safe. This was a literal compliance with the policy. It was not necessary to preserve the old books.

2. Conceding that the subsequent insurance subsisted under a valid contract, it was consented to by the agents of the insurance company. They acted for it throughout, and had full authority to modify or waive the stipulation requiring written consent. May on Ins., 555, 755; Wood on Ins., §§ 387, 392; 51 N. W. Rep., 367.

Verbal assent of the agents was sufficient. May on Ins., 552; *Insurance Co.* v. *Gray,* 8 Lawyers' R. An., 70; 43 Kan., 397; 27 Mo. App., 62; 11 N. Y. Sup. Ct., 125; 23 Pac. Rep., 637; 49 N. W. Rep., 634; *Insurance Co.* v. *Wilkinson,* 13 Wall., 222. See also *Rivara* v. *Insurance Co.,* 62 Miss., 720; *Insurance Ass'n* v. *Matthews,* 65 *Ib.,* 301; *Insurance Co.* v. *Bowdre,* 67 *Ib.,* 620.

*Nugent & McWillie,* on the same side.

1. The agents of the company, who solicited insurance, countersigned and delivered policies, collected premiums and otherwise represented the corporation, had full authority to waive the condition requiring written consent for additional insurance. *Rivara* v. *Insurance Co.,* 62 Miss., 720; *Insur-*

*ance Co.* v. *Bowdre,* 67 *Ib.,* 620; 7 Am. & Eng. Enc. L., 1017; 36 N. Y., 550; 65 *Ib.,* 1; 17 R. I., 785; 66 Texas, 232; 35 Neb., 752; 39 Minn., 129; 61 Mich., 633; 18 S. W. Rep., 505; 3 N. W. Rep., 600; 28 *Ib.,* 749; 39 *Ib.,* 70; 50 *Ib.,* 240; 52 *Ib.,* 866; 24 At. Rep., 833.

The curative effect of a verbal waiver by an agent authorized to act for the company is fully recognized. 16 Md., 260; 53 N. H., 10; 73 Pa., 342; 50 Ill., 519; 6 Lans., 166; 4 Bush (Ky.), 242; 6 *Ib.,* 174; 8 *Ib.,* 133; 24 N. J. L., 447; 11 Kan., 93; 36 Wis., 67; 41 *Ib.,* 660; 15 N. Y., 573; 13 S. E., Rep. (N. C.), 236; 23 Pac. Rep., 637; *Hayward* v. *Insurance Co.,* 52 Mo., 181.

It is immaterial that the waiver is made before the loss. 2 Biddle on Ins., §§ 1082, 1131.

2. The iron safe clause was strictly complied with. It only required the keeping of books showing purchases, sales, etc., *after* the policy was taken out. Such books, with the inventory of goods, showed fully the condition and value of the stock of goods. *Insurance Co.* v. *Delta Bank, ante,* p. 608; *Harvey* v. *Insurance Co.,* 19 S. E. (W. Va.), 585.

Argued orally by *Fontaine Jones,* for appellant, and *T. A. McWillie* and *W. L. Nugent,* for appellee.

WOODS, J., delivered the opinion of the court.

Two questions are presented by this appeal, viz.: (1) Did the insured forfeit his right to a recovery on the policy sued on, by reason of his procurement of subsequent and additional insurance without having the consent of the appellant indorsed in writing on its prior policy? (2) Has the insured forfeited his right to a recovery on the policy issued by appellant, by a violation of what is known as the iron safe clause contained in the contract of insurance?

We shall not enter upon any discussion of the disputed facts. The jury has found these issues for the appellee, and we are satisfied with that finding. The fact that the subse-

quent insurance in the Orient Company was brought to the attention of the appellant's agent, with whom alone the insured dealt at all times, and the other fact that request was made of this agent that he indorse the appellant's consent to this additional insurance, in writing, on the policy sued on, and the still further fact that the agent told the insured that such indorsement, in writing, was unnecessary, and that, in case of loss, the appellant company would pay without regard to such a technicality, we now assume to be true.

·1. The naked inquiry, then, is, could the agent of the insurer waive the condition of the contract requiring consent for additional insurance to be made, in writing, indorsed on the policy? Or, to put it otherwise, is the insurer estopped from claiming a forfeiture by the acts and conduct of its agent?

We do not understand that there is any disagreement between counsel as to the character of the agency in this case. Clearly, Roberts, Davis & Co. were general agents. They represented and stood for the company, they received applications, they issued policies, they collected premiums, they received notice of other insurance and gave consent thereto, and, in general, they did for the company whatever it could do in the matter of making and continuing contracts for insurance. The company, being an artificial creature, could only act through human agencies, and what their general agents did in this case, as indicated above, the company itself may be said to have done.

The power to make the contract of insurance by the general agents, necessarily involves the power, also, to modify or vary the same by subsequent contract. The clause in the contract which requires written consent for additional insurance to be indorsed upon the policy is no more unchangeable, at the pleasure of the parties, than any other provision or condition in the contract. The contract of insurance evidenced by the policy is no more sacred than any other contract, and we have yet to learn that ordinary contracts be-

tween men may not be altered, varied or wholly abrogated at the election of the parties to them. The condition of the policy requiring consent, in writing, for additional insurance is inserted for the benefit of the insurer, and we are at a loss to conjecture any reason for holding that the insurer may not waive it at its pleasure. It is a mere method or manner of evidencing the insurer's consent, and it is impossible to conceive why the insurer may not waive this mere manner of assenting, and substitute another. Is it because of some supposed superior dignity of the written consent over parol? The supposition is vain and idle. The parol contract may modify or put an end to the written contract, just as the written may modify or end the parol. Every new contract, whether in writing or parol, supersedes the old, whether in parol or writing, according to the will and purpose of the parties.

From what we have already said touching the power of the general agents of the appellant company, it seems to us to necessarily follow that such agents may waive the condition requiring consent in writing for additional insurance. This case, on its facts as found by the jury, goes far beyond the most of reported cases in which this question has been passed upon by many courts of last resort in accordance with the views which we entertain. Here the insured actually applied to the company, or its general agents standing for it, to have the proper written consent indorsed, and was refused, on the declared ground that it was unusual and unnecessary, and that any loss would be promptly adjusted without regard to that technicality. It would be unconscionable to now allow the company to assert a forfeiture for the doing of, or the omitting to do, that which the insured did or omitted at its own suggestion. To state the defense, thus illumined, shocks conscience and offends judgment.

May, in his work on insurance, states the prevailing tendency of judicial opinion in these words: "In many policies the notice of other insurance is required to be in writing,

and indorsed on the policy, and it has *formerly* been frequently held to be essential that these particulars should be literally complied with. . . But the courts have become more liberal in favor of the assured in their construction of this sort of stipulation in policies of insurance. While, as we have seen, the old rule required the consent to be in writing and indorsed on the policy, it is the decided tendency of the modern cases to hold that, if the notice be duly given to the company or its agent, of the additional insurance, and no objection is made, the company will be estopped from insisting on a forfeiture of the policy because their consent thereto was not indorsed, as literally required by the stipulation." May on Ins., §§ 369, 370.

Wood on Fire Insurance, vol. 2, p. 802, has this language : " It has formerly been held that, not only notice of the other insurance, prior or subsequent, must be given, but also that it must be indorsed upon the policy when so provided therein. But the tendency of the courts latterly is towards a more liberal construction in favor of the assured, and *there is now no question but that oral notice and an oral assent, or acts amounting to an assent, without an indorsement upon the policy, is sufficient.*"

Flanders on Fire Insurance states the rule thus : " Where, however, the underwriter has notice of the additional insurance, and, although not formally giving his assent thereto, yet by his acts, such as collecting assessments, treats the policy as in full force, it will be a waiver of the right to resist a recovery upon that ground." See pages 47, 51, 56, 57.

In the very recent and excellent work of Biddle on Insurance, the writer's conclusion from an exhaustive examination of adjudged cases is thus stated : " Probably any condition inserted in the policy for the benefit of the insurer may be waived by him." Biddle on Ins., 2, p. 1086.

To the same effect are the following authorities selected from the many examined : *Cobb* v. *Insurance Co.*, 11 Kan., 93 ; *Pitney* v. *Insurance Co.*, 65 N. Y., 6 ; *Young* v. *Insurance Co.*, 45 Iowa, 377 ; *Insurance Co.* v. *Earle*, 33 Mich., 143 ;

*Insurance Co.* v. *Lyons,* 38 Texas, 253; *Hadley* v. *Insurance Co.,* 55 N. H., 110.

The rule now announced was foreshadowed and bound up in the cases of *Rivara* v. *Insurance Co.,* 62 Miss., 720; *Insurance Association* v. *Matthews,* 65 *Ib.,* 301; *Insurance Co.* v. *Bowdre,* 67 *Ib.,* 620.

2. Has there been any violation of that provision of the policy designated the "iron safe clause?" That clause is as follows: "The assured under this policy hereby covenants and agrees to keep a set of books showing a record of business transacted, including all purchases and sales, both for cash and credit, together with the last inventory of said business; and further covenants and agrees to keep such books and inventory securely locked in a fire-proof safe at night, and at all times when the store mentioned in the within policy is not actually open for business; . . . and, in case of loss, the assured agrees and covenants to produce such books and inventory, and, in the event of a failure to produce the same, the policy shall be deemed null and void, and no suit or action at law shall be maintained thereon for any such loss." Now, the evidence shows very clearly that the application of the insured for the policy in suit was completed and signed and the policy delivered not earlier than the seventeenth day of December, 1892. We may properly assume, so far as the rights of the insurer are affected by the date of the contract, that it was actually made on the day named. On that very day the insured took a new inventory of his stock of goods, and this last inventory, as well as the two preceding ones, dated respectively September 17, 1892, and December 17, 1891, were kept in the iron safe, and were produced after the loss. On the seventeenth day of December, 1892, the insured opened a new set of books, transferring to them all footings or balances from his old books, and thereafter, from said seventeenth day of December, entered fully in the new set of books itemized statements of every transaction occurring in the conduct of the business. The

forfeiture under the iron safe clause is, by the appellant, contended for because of the failure of the appellee to keep in the iron safe the old books, showing the itemized statements of the transactions antedating the policy sued on, and to produce them after the loss occurred. Why these old books of account were not kept in the safe, but were left outside and consumed in the fire which occasioned the loss, is made clear by the evidence.

It is perfectly apparent that the insured did exactly what this iron safe clause required him to do. This clause made it obligatory upon him to keep the last inventory of his business, and to keep a set of books showing a record of business transacted, including all purchases and sales, both for cash and credit, and to keep the inventory and books securely locked in a fire-proof safe, and this condition the insured fully complied with. His duty was to keep a set of books showing a record of business thereafter transacted, including future purchases and sales. He did not consent to preserve indefinitely his old books, showing all the past transactions. So far as this contention may be concerned, it was immaterial whether he had any books of account antedating the policy. He had his inventory showing the amount of stock he had on hand when the policy was issued, and he was to keep a record of his future business transactions, with a view to disclosing, when necessary, when and where and how the stock went. We repeat, the duty laid upon him was prospective, and he fully met it. Of course, the last inventory may have been fraudulent or fictitious, and the making this appear would defeat the right to recovery by the insured; but that is not the point involved in the present discussion. The point in this contention is whether the keeping the last inventory and a set of books showing the future transactions of the insured in his mercantile business, was compliance with the iron safe clause on the part of appellee. That it was, we entertain no doubt.

*Affirmed.*