LONDON GUARANTEE & ACCIDENT COMPANY v. MISSISSIPPI
CENTRAL RAILROAD COMPANY.

[52 South. 787.]

1. CONTRACTS. *Insurance. Waiver of provisions. Evidence. Written. Parol.*

A stipulation in a written contract to the effect that its provisions shall not be waived by parol is ineffectual, as much so as would be a parol agreement not to contract in writing.

2. SAME. *Same. Corporation.*

A stipulation in a contract executed by a corporation to the effect that its terms could not be waived by any agent or officer, is not aided by the claim that the power to waive was confined to the corporation itself, since a corporation can act only by agents and officers.

3. INSURANCE. *Liability of insurer. Estoppel. Acts of attorney.*

Where a railroad company, being insured by a guarantee company against liability on a claim, authorized an attorney to settle the claim if it could be done for not more than a designated maximum sum, and the guarantee company authorized the same attorney to settle the same claim if it could be done for not more than a smaller maximum sum, and the attorney settled the claim for a sum less than the railroad company's, but more than the guarantee company's maximum, the settlement was the railroad company's and in no way estopped the guarantee company as to the amount of its liability to the railroad company.

4. SAME. *Same.*

The liability of an insurance company on an employer's liability policy is fixed by the terms of the policy, and is not affected by its instructions to an attorney touching a settlement he might make with the injured employe.

5. SAME. *Suit on policy. Question for jury.*

Whether the written consent of a guarantee company to a settlement between the insured employer and the injured employe was waived by the guarantee company is a question of fact for determination by a jury.

6. SAME. *Same.  Custom varying contract.*

The credibility of witnesses and weight of testimony to establish a custom between a railroad company and a guarantee company permitting the former to settle claims without giving notice to the latter, required by its policy, are for determination by a jury.

7. SAME. *Construction of policy.  Time of expiration.*

The time for the expiration of an insurance policy may be extended by the issuance of what is known in insurance parlance as a "binder," a contract extending the term of a previously issued policy.

FROM the circuit court of Adams county. .

HON. MOYSE H. WILKINSON, Judge.

The railroad company, appellee, was plaintiff in the court below; the guarantee, etc., company, appellant, was defendant there.  From a judgment in plaintiff's favor defendant appealed to the supreme court.  The facts are stated in the opinion of the court.

*Mayes & Longstreet,* for appellant.

Whether or not the guarantee company was liable to the railroad company in any sum, was purely a question of fact for the jury.

Clause "E" of the policy is as follows: "The assured shall not voluntarily assume any liability, nor shall the assured, without the written consent of the company previously given, incur any expense or settle any claim except at his own cost, or interfere in any negotiation for settlement or any legal proceedings; except that the assured may provide at the time of the accident, such surgical relief as is imperative.  Whenever requested by the company, the assured shall aid in securing information and evidence and the attendance of witnesses, and in effecting settlements and in prosecuting appeals."  The assured railroad company did not comply with this clause in the policy.  Not only

did it not attempt to show that it complied with this clause, but, on the other hand, it shows that it wholly ignored it. The evidence shows that the railroad company took into its own hands the claim sued on; and that it voluntarily assumed the liability; that it settled without written consent of the appellant guarantee company, absolutely violating the aforesaid policy.

After appellee's counsel in the court below were unable to show that clause "E" of the policy had been complied with, they next introduced the manager of the railroad company, and undertook to show by him that it was not the custom of the railroad company to comply with the conditions of the policy requiring the assured to obtain written consent and authority from the insurance company before any settlement was made. They undertook to get around the condition of the policy on the theory that by some sort of alleged custom or usage the railroad company was not required to live up to this part of the contract, because, they contend, the guarantee company is estopped from enforcing the contract entered into. 22 Ency. Pl. & Pr. 411.

The jury are the sole judges of the facts and credibility of witnesses. It is for them to say whether or not facts establish custom or usage; and if the jury decide that the evidence introduced established a custom or usage, then, and not until then, is it in the province of the court to say whether or not such custom or usage operates as an estoppel.

The court will observe that the court below erred in giving the peremptory instruction to find for the plaintiff for the whole sum sued for, less an offset of some $1,100, for premiums due by the railroad company to the insurance company.

There are but two large claims upon which this suit is instituted; the first being the Messer settlement, which the insurance company repudiated, because, according to its contention, the protection under the policy expired before the accident oc-

curred.    The second was the Fairchilds claim, which counsel admitted was repudiated, but endeavor to claim protection by saying that the insurance company was estopped from repudiating this claim because, so contends appellee, the settlement was made by the attorney for the insurance company.    We call the attention of the court to the fact that T. Brady, Jr., attorney, acted, according to his own statement, throughout the negotiations leading up to this settlement, solely as a legal representative of the railroad company, and that he did not represent, nor did he think that he was representing, the guarantee company in the transaction.    Practically all settlements were made for small sums.    But granting, for the sake of argument, that no notice was required by the guarantee company as to any claim other than the two aforesaid claims, we submit that there were no other claims involving amounts that called for notice or waiver, nothing of any consideration, can it be said, even if it were true, that because the railroad company settled a few claims now and then amounting to a few dollars each, and the bill against the guarantee company was paid for these sums, that there has been a custom or usage established by which the guarantee company is estopped from standing on and insisting upon the fulfillment of the contract and conditions of the policy, when items of some magnitude arise?    Certainly not.    We submit that in such a case, whether it be a question for the court or jury, by no sort of strained construction of the law or of the facts would any such usage or custom be established, so as to operate as an estoppel against the guarantee company, and to do violence to the very terms of the contract itself.    3 Cooley's Briefs on Insurance, 2513.

Learned counsel for appellee undertook to show that the guarantee company was estopped from insisting upon the enforcement of the terms of the policy in the Fairchilds claim because,

he says, the settlement was made by the attorney of the appellant.    The attorney referred to is Thos. Brady, Jr., Esq. His testimony, however, does not uphold such contention.

The appellant is liable for nothing on the Fairchilds claim because no notice was given in accordance with the terms of the policy as to those losses and settlements.

As to the Messer claim, which had been paid by the railroad company, it is to be noted that the railroad company had secured another employer's liability policy in the Ocean Company.    The injury occasioning this loss occurred after the expiration of the contract period of the original policy sued on and for such reason it was not liable.

An assured cannot rely on an attempted waiver of a condition subsequent where the authority of the agent attempting to make the waiver is expressly limited by the contract.    3 Cooley's Briefs on Insurance, 2513.

In the case of *Northern Assurance Co. v. Grand View Building Ass'n,* 183 U. S. 219, it was held that, the insured not having complied with the conditions, the policy ceased and became of no effect on the subsequent insurance being effected, and that neither the agent nor the inspector had the power to waive a compliance with its terms.

*Jeff Truly,* for appellee.

An insurance policy of any character must be construed most favorably for the insured, and any of its conditions may be ignored or waived by the insurer.    There is no denial in this case by the appellant and no testimony which can be construed as disputing the fact that all settlements made by the appellee, and herein concerned, were made after due notice of the respective accidents sent to the appellee and the settlement made thereafter ratified, and the amount of the settlement paid by appellee. This is, in fact, made manifest by the letter from Clark & Com-

pany, managers of the southern department of the appellant insurance company, in which, speaking of a certain accident, the agent of the guarantee company inquires: "If party will expect anything more than usual in settling." Thus recognizing the course of dealing which had existed theretofore, and which continued throughout the life of the policy. The peremptory instruction was granted correctly. As there was no dispute of facts, there was nothing to submit to a jury; as there was no denial of the statements made in behalf of appellee it was entitled to recover of the appellant guarantee company.

Stress is laid by appellant upon the refusal by the circuit court of the instructions asked by appellant restricting the recovery upon the Fairchilds claim to a sum not greater than five hundred dollars. To show the fallacy of this position the exact facts connected with the Fairchilds claim will be set forth so that the court may see that the instruction asked for by appellant was properly refused by the trial court.

On July 9, one Fairchilds was killed; notice was immediately sent, as required by the policy, to the insurance company. This notice was duly received and acknowledged on July 15. Notice of the witnesses' statements regarding the accident was also promptly sent to the appellant insurance company. On July 28, the superintendent of the railroad company wrote to appellant referring to the accident and asked for advice as to the proper course to pursue in so far as a settlement was concerned, and further asking if it was the wish of appellant insurance company to have its regular attorney, Thos. Brady, Jr., Esq., look after the matter. On July 30 receipt of this letter was acknowledged by appellant and the appellee was advised that "We have requested Mr. T. Brady, Jr., attorney, of Brookhaven, to investigate this subject at once." This investigation was immediately made by the aforesaid attorney selected by the insurance company, because, on August 14, the law department of

the London Guarantee & Accident Company, through its general
managers, notified the managers of its southern department that
the Fairchilds case had been investigated by its law department
who reported that the case was one of probable liability.    The
letter further stated that Mr. Brady, attorney, was of a similar
opinion regarding the probable liability.    It is evident from this
that the insurance company had heard from attorney Brady re-
garding the claim, which, just one month before, he had been
employed to investigate.    The southern department of appellant
was given a limit of seven hundred and fifty dollars in settling
the claim.    Appellant also suggested to its southern department
that the railroad company be requested to contribute towards
the settlement.    Attention is called to the testimony relative to
this because it shows that the appellant company not only
acknowledged its liability for the Fairchilds accident, but had
actually and actively taken charge of the settlement and had
employed an attorney who also represented the railroad com-
pany.    This was some time prior to the settlement which was
afterwards effected by the attorney of the appellant.    When this
letter is read in connection with the testimony of the superin-
tendent of the railroad, it is perfectly obvious that the settle-
ment was effected by Brady, attorney, and that at the time of
the settlement Brady had previously been employed by the ap-
pellant company.    Brady subsequently notified the appellee rail-
road company that he had succeeded in settling the damage suit
of Fairchilds for $2,150, his letter further stating: "This is the
best settlement I could make, and I think it a fairly reasonable
one."    So it is a fact that due notice was given under the terms
and conditions of the policy of the accident; the appellant com-
pany appointed an attorney to investigate the legal aspect and
determine the question of its probable liability under the pro-
visions of its policy of indemnity.    This investigation resulted
in a report from the attorney that the appellant insurance com-
pany was liable; the extent of the liability, under the terms of

the policy amounting to $1,500 and costs and expenses; and this report of liability was investigated by the law department of the appellant company and the conclusion that it was liable was affirmed by it. The general law department of the appellant company notified its southern managers to proceed to effect a settlement. This settlement was effected by the attorney whom the appellant had employed; the settlement, in his opinion, representing all parties, was the best that could be made and furthermore was a reasonable one; the settlement required the appellee railroad company to pay $2,150 which was $650 in excess of the penalty of the policy.

Under this state of facts, will the appellant now be heard to say that it should be required to pay only one third of its liability? It will be noted that in the letter from the general law department to the managers of the southern department of appellant company, a limit of $750 was allowed to secure a settlement, and a copy of this letter was sent to the appellee railroad company.

As soon as Mr. Brady, attorney, had notified the railroad company of the settlement, the railroad company immediately wrote to the appellant company for authority to draw on the latter company for $1,500, the amount of its liability. After the settlement had been made, and the money paid over, the appellant company endeavored to avoid the full payment of its liability, and wrote appellee "We will doubtless be able to get our company to increase its offer from $750 to one half of the total settlement of $2,150." Under this policy of indemnity, the appellant company should not be permitted to avoid its obligation to insured for which it had received a premium, and in which it bound itself to indemnify the insured railroad company against all damage to the extent of $1,500 for each accident. *New Amsterdam Casualty Co. v. East Tennessee, etc., Co.,* 139 Fed. 602.

Under the circumstances it is a matter of no moment that

Brady may have thought his authority to bind the appellant company was limited to a certain sum.   It is admitted by all. parties that the insurance company was liable; this being true,. the amount of its liability was fixed by the terms of the policy.

The instruction asked by the appellant undertaking to limit the recovery of the railroad company on account of the Fairchilds item to $500 was incorrect, and therefore properly refused.   Under any view of the testimony it must appear that appellant company acknowledged its liability for a sum in excess of that amount.   The letter from the general manager of the law department of the appellant company, a copy of which was sent to the appellee under date of August 18, shows that the appellant company acknowledged its own liability and authorized the payment of $750 as their liability.

It is further to be noted that after the settlement was made,. and the appellant insurance company first denied its liability,. it was not a denial of total liability, but the denial, although it. was a refusal to pay the total penalty of the policy, yet carried with it an offer to pay one half of the total settlement of $2,150. If this court should hold that an indemnity insurance company can thus force a contribution from the assured in a dangerous. case by threatening to permit it to go to trial unless the assured shall bear a proportion of the costs, nevertheless by the offer of the insurance company, the railroad company is entitled to receive upon the Fairchilds claim one half of the amount expended which was $2,150, and therefore should recover of the insurance. company $1,075.

*T. M. & J. D. Miller,* on the same side.

The claim of the appellee, on which the peremptory instruction was granted in appellee's favor, was made up of several items, one of which was referred to as the Messer item.

A serious accident was sustained on May 2, 1907, by one. Messer, an employe of the appellee railroad company, which.

accident was covered by the policy of insurance here concerned. This policy was cancelled on May 7, 1907, by telegram from general manager Smith of the railroad company to the insurance company.

The appellant company absolutely refused to have anything to do with the Messer claim, although it was promptly notified thereof, and the railroad company, using its best judgment, compromised the case for one thousand dollars, charging the appellant company with one half of that amount.

There can be no dispute as to the liability of the appellant company for one half of the Messer settlement, if its policy, as extended, was in effect at the date of the accident. The construction of the agreement for extension of the period covered by the policy was solely a matter for the trial court and the finding of the trial court that the insurance was in effect until cancelled on May 7 was obviously correct. The agreement extended the policy with all of its terms and conditions, and the policy provided that: "This policy may be cancelled by the company at any time by written notice to the assured, stating when the cancellation shall be effected. It may be cancelled by the assured by like notice to the company." No other method of cancellation was contemplated, and the railroad company was and is liable for the insurance premium until the date the policy was canceled.

The contention was made in the circuit court on behalf of the appellant company that the taking out of another policy in another company cancelled the policy on which suit was brought. The contention is refuted by clause H of the policy, which reads as follows: "If the assured carry a policy of another insurer, whether valid or not, against a loss covered by this policy, the assured shall not be entitled to recover from the company a larger proportion of the entire loss than the amount hereby insured bears to the total amount of his insurance."

The insurance company has not been prejudiced by the taking

of a policy in another company, but is benefited thereby, as the claim made upon it on account of the Messer accident was only five hundred dollars, its proportion of the full amount paid in settlement of that suit.

Argued orally by *Edward Mayes,* for appellant.

Whitfield, C.

The railroad company sued the insurance company for the sum of $3,000, for the purpose of reimbursing itself for certain moneys paid out by the said railroad company in settlement of certain personal injury claims, for which it is alleged in the declaration the plaintiff held against the said insurance company an employer's liability policy, by the terms of which the insurance company agreed and bound itself to indemnify the said railroad company against losses growing out of liability imposposed upon the railroad company for damages on account of bodily injuries or death accidentally suffered by employes while the said policy should be in force. There were a number of claims set out in Exhibit A to the declaration, only two of which, the Fairchilds claim and the Messer claim, were for a large amount. The insurance company's first defense is that under the terms of the policy the said claim should not have been paid by the railroad company without the written consent of the insurance company. All this contention has been put definitely at rest in this state, insofar as the insistence is that there can be no parol waiver of a written stipulation, by at least five express decisions, to wit, the cases of *Insurance Company v. Gibson,* 72 Miss. 58, 17 South. 13; *Sheffy's case,* 71 Miss. 919, 16 South. 307; *Matthews' case,* 65 Miss. 301, 4 South. 62; *Rivaras' case,* 62 Miss. 727, and *Bowdre's case,* 67 Miss. 631, 7 South. 596, 19 Am. St. Rep. 326. That the matter may not again be presented to us, after all the definite settlement, we set out here

what was said in the *Gibson case, supra,* on this precise point at page 63, 72 Miss., page 13, 17 South.:

"It is insisted that the waiver of the requirement that appellee's real interest should be set out in the policy, by the conduct of its agent, W. A. Drennan, Jr., who issued the policy and received the premium, after he was fully informed of all the lease showed cannot be shown by parol, and cannot bind the company. This contention has been thoroughly considered by this court and settled adversely to appellant in *Sheffy's case,* 71 Miss. 919 [16 South. 307], in *Matthews' case,* 65 Miss. 301 [4 South. 62], in *Rivaras' case,* 62 Miss. 727, and in *Bowdre's case,* 67 Miss. 631 [7 South. 596, 19 Am. St. Rep. 326]. The very pith of the true reasoning on this subject is condensed into this single sentence of the supreme court of Michigan in *Insurance Co. v. Earle,* 33 Mich. 143, quoted with approval by Judge CAMPBELL in *Matthews' case:* 'There can be no more force in an agreement in writing not to agree by parol than in a parol agreement not to agree in writing. Every such agreement is ended by the new one which contradicts it.' And this is true as well of the provisions which relate to the formation and binding force of the contract while running, as to those provisions relating to what has to be done after a loss. 11 Am. & E. Enc. L. p. 343, note 1, and page 338, par. 4, and authorities in note 2, p. 339. The case of *Cleaver v. Insurance Co.,* 65 Mich. 527 [32 N. W. 660, 8 Am. St. Rep. 908], whilst properly distinguishing the case of *Insurance Co. v. Earle,* 33 Mich. 143, in no way conflicts with the doctrine which the last-named case announces, and which we approve. In *Cleaver's case,* the stipulation in the policy was that (page 528, 65 Mich., page 660, 32 N. W. [8 Am. St. Rep. 908]) 'the agent of this company has no authority,' etc. Here the stipulation is that 'no officer, no agent, and no other representative shall,' etc. That this distinction was the foundation of *Cleaver's case* is clearly shown in

[71 Mich. 414] 39 N. W. 571 [15 Am. St. Rep. 275], where the judgment was reversed in favor of the assured, on its being shown that R. T. Smith, the secretary, had waived the stipulation otherwise than by indorsement on the policy.

"It is vain to say that this clause does not seek to prevent the corporation itself from waiving a stipulation. The corporation acts only through agents; and if 'no agent, no officer, and no other representative' can waive a stipulation, who is left to waive it for the corporation? This clause is a species of refinement by which the corporation withdraws within its invisible and intangible ideality, when liability is sought to be imposed upon it, bound by the acts of no agent, officer, or other representative, but reaches forth therefrom with Briarean hands to receive the profits and avail of these same acts performed by these same 'agents' as against those with whom these same agents have dealt. The refinement is too subtle for the practical affairs of actual life, and we repudiate it. It may be noted, too, that in *Cleaver's case,* 65 Mich. 531 [32 N. W. 660, 8 Am. St. Rep. 908], the premium had been received after the agent knew of the ground of forfeiture. The provision relied on here is in the exact words of the stipulation relied on in *Lamberton v. Insurance Co.* [39 Minn. 129] 39 N. W. 76 [1 L. R. A. 222], decided by supreme court of Minnesota in 1888, respecting which the court says in a very clear and strong opinion: 'That is to say, in other words, that one of the parties to a written contract, which is not required by law to be in writing, cannot, subsequent to the making of the contract, waive by parol agreement provisions which had been incorporated in the contract for his benefit. If this provision is effectual at all as a limitation of the power of future action, it limits the power of every agent, officer, and representative of the company, and hence, practically, that of the corporation,' and it was held that 'this provision, not being a limitation upon the authority of any particular agent or class of agents, but, in effect, upon the capacity of the cor-

poration for future action,' could not be imposed, but was void. Same doctrine is announced in Richards on Insurance, 91, where this provision is said to 'amount to the contradiction of a rule of law.' And see *Insurance Co. v. Sheffy,* 71 Miss. 919 [16 South. 307]. And we think this reasoning sound."

The second contention of the insurance company is that the court below erred in giving the peremptory instruction to find for the plaintiff for the whole sum sued for, less an offset of some $1,100, for premiums due by the railroad company to the insurance company. The Fairchilds claim was for $1,500. This claim had been settled by the railroad company's attorney at $2,150. Under the terms of this employer's policy, the insurance company's liability for this single claim was limited to $1,500. The railroad company insists on two contentions in this connection:

(A) That the insurance company is estopped to deny its liability for said $1,500 because the settlement was made by T. Brady, acting as its attorney, and therefore the insurance company was estopped to deny the liability. The testimony in the case clearly shows that Brady did not act as attorney for the insurance company in making this settlement, but as attorney alone for the railroad company. The evidence makes it clear that the insurance company limited Brady to $500 on this claim, and he was not able to effect any such settlement, but, on the contrary, settled the claim as the attorney of the railroad company for $2,150. Brady's action throughout the matter was solely for the railroad company, since it is obvious he could not have settled for the insurance company when it forbade such settlement by him at a sum in excess of $500. Brady was authorized by the railroad company to pay $2,500, if necessary, but succeeded in making a better settlement, $2,150. This contention on the part of the railroad company is therefore without merit.

But the railroad company contends (B) that the liability of

the insurance company is fixed by the terms of the policy, whatever may have been the limit it fixed in its correspondence with Brady, and that the evidence fully shows, on any fair view of it, an admission of liability on the part of the insurance company for at least $750 on this claim, and that its local agents at Birmingham, Clark & Co., indicated that they might get the home office in Chicago to pay as much as $1,075, half of the $2,150 paid by the railroad company on this claim. We think the railroad company is clearly correct in both these contentions, to wit, that the liability of the company is to be determined by the terms of the policy; and, second, that on the testimony in this record it is certainly liable for at least $750 on this claim, provided it is liable for anything.

And this brings us to the next contention of the guarantee company, which is that it is liable for nothing on this claim, because no notice was given in accordance with the terms of the policy as to these losses and settlements. We have indicated above that the written consent stipulated for in the policy might be waived by parol as a matter of law; but this still leaves open the question whether in fact it was waived. And whether as a matter of fact the evidence shows the notice was waived was a question to be submitted to the jury. The railroad company, admitting that it had no written consent from the insurance company, endeavored to obviate this by saying that there was a custom between the railroad company and the insurance company of settling these claims and giving the notice therefor without this written consent; that this had been shown by a long course of dealing between the parties. But it must be obvious, upon reflection, that the whole of the evidence offered to establish this custom was a matter, as to its credibility and its weight, for the jury alone, and not for the court. The court, therefore, manifestly erred in giving the peremptory instruction, since this evidence should have been submitted to the jury, that they might

determine, as the triers of fact, whether such custom had been established. We intimate, of course, no opinion whatever as to the value of this testimony. The error of the court consisted in not leaving the solution of this question of fact to those who are authorized to try the facts, to wit, the jury. In regard, therefore, to this Fairchilds item, we conclude that the insurance company was liable under the terms of the policy for the $1,500, provided the jury shall find as a fact that the custom insisted upon by the railroad company existed.

As to the Messer item of $500 : That claim was for $1,000 in whole, and it was paid by the railroad company. The railroad company had secured another employer's liability policy in another company, known as the Ocean Company. That company had paid half this loss, $500, and this guarantee company is sued here for only its half, $500, of that loss. The guarantee company defended against this item on the ground, which was the fact, that the injury occasioning this loss occurred after expiration of the contract period of the original policy sued on, and for that reason it insisted that it was not liable. It is idle to waste time on this contention. The correspondence plainly shows that the guarantee company issued a "binder," as it is called, which binder validly extended the terms of the policy beyond the period of the occurrence of this injury. The construction ingeniously attempted to be placed on this correspondence by the learned counsel for the appellant is far too strained. Clark meant much more by his letters than to keep the original policy in force until the railroad company could effect reinsurance. It may be conceded, and we think it is correctly contended, that the court did err in refusing to permit the defendant to introduce evidence to show that, at the time of the alleged liability of the said defendant on the Messer claim, the plaintiff had taken out a similar policy in a similar company to cover one of the identical claims sued on ; but the error was a harmless one, because clause

H of the policy expressly provided, in case of concurrent insurance, that the defendant should be liable only for its proportion of the loss, and that proportion here was manifestly one-half of the $1,000.   So far, therefore, as the Messer claim is concerned, we think the railroad company was clearly entitled to recover the $500.

We remark, generally, that much valuable light is shed upon this character of policy, presented for the first time in this state in this case, and the contentions under that sort of policy presented in this case, by the case of *New Amsterdam Casualty Company v. East Tennessee Telegraph Co.,* 139 Fed. 602, 71 C. C. A. 586, which may be profitably studied in connection with this case.   Of course, the small items in Exhibit A were properly within the peremptory charge.

It follows that the judgment of the court below is reversed, and the cause remanded for a new trial.

PER CURIAM.   The above opinion is adopted as the opinion of the court.

*Reversed and remanded.*